Michael COOPER, Appellant

v.

The STATE of Texas.

No. PD–1022–12.

Court of Criminal Appeals of Texas.

May 14, 2014.

Linda Icenhauer–Ramirez, Austin, TX, for Appellant.

Elizabeth Phillips, Assistant District Attorney, Lisa C. McMinn, State's Attorney, Austin, TX, for the State.

## OPINION

JOHNSON, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, COCHRAN, and ALCALÁ, JJ., joined.

Appellant was convicted of five counts of aggravated robbery pursuant to an indictment that named three different complainants, with all counts arising from a single home invasion. Two counts named Andrew Chaney as the complainant, two counts named James Barker as the complainant, and one count named Paul Linden as the complainant. The jury found him guilty of all five counts in the single indictment and assessed appellant's punishment at imprisonment for 60 years on two of the counts, 80 years on two other counts, and 65 years on the remaining count. The trial court sentenced appellant accordingly and ordered all five sentences to be served concurrently. The court of appeals affirmed the judgments. *Cooper v. State*, 373 S.W.3d 821 (Tex.App.–Austin 2012).

In his petition to this Court, appellant raises two grounds, both of which challenge the court of appeals's holding that the Double Jeopardy Clause of the United States Constitution was not violated when he was convicted of both aggravated robbery by causing bodily injury and aggravated robbery by threat to the same victim during a single robbery. These grounds involve appellant's convictions for two separate counts of aggravated robbery of each of two of the named complainants, Andrew Chaney and James Barker. He does not challenge his conviction for robbing Linden.

We granted review. After reviewing the opinion of the court of appeals, the record, and the briefs of the parties, we conclude that appellant's challenged convictions do violate the double-jeopardy clause. Accordingly, we sustain appellant's grounds for review. We reverse the judgment of the court of appeals and remand this cause to that court for further proceedings and appropriate disposition.

KELLER, P.J., filed a concurring opinion in which JOHNSON, J., joined.

COCHRAN, J., filed a concurring opinion in which ALCALÁ, J., joined.

PRICE, J., filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined. WOMACK, J., did not participate.

KELLER, P.J., filed a concurring opinion in which JOHNSON, J., joined.

This case presents "an exceedingly complex double-jeopardy question" [1] regarding whether the State may obtain two aggra-

---

1. *See Ex parte Denton*, 399 S.W.3d 540, 547 (Tex.Crim.App.2013) (Keller, P.J., concurring).

vated robbery convictions involving the same victim and the same transaction. At issue is whether the State may obtain a conviction for aggravated robbery by "threat" and a conviction for aggravated robbery by causing bodily injury. Had one of those two convictions been for the lesser-included offense of aggravated assault instead (the bodily injury count), this case would have been legally indistinguishable from our recent opinion in *Garfias v. State*.[2] But the State in the present case did not settle for one conviction for aggravated robbery and one conviction for aggravated assault. Instead, the State obtained two convictions for aggravated robbery. I agree with a majority of this Court that the two convictions for aggravated robbery violates double jeopardy. I further agree to remanding this case to the court of appeals to determine the appropriate remedy in the first instance.

### A. Error: The Underlying Elements are Alternative Methods of Committing the Same Offense

#### 1. *Only One Statute is at Issue*

The offense of aggravated robbery incorporates the elements of the lesser offense of robbery, and it is the provisions of the robbery statute, alone, that are at issue here. Parsing the provisions of a single statutory section "is unlike a situation involving different statutes," because the codification of offenses in different statutes is by itself "some indication of legislative intent to authorize multiple prosecutions."[3] When a double-jeopardy claim involves the provisions of a single statute, we perform a "units" analysis to determine the allowable unit of prosecution that the statute prescribes and how many units have been shown at trial.[4] The allowable unit of prosecution a statute prescribes is purely a matter of statutory construction, but it is a less structured analysis than that required in the two-statute scenario, with all relevant information being reviewed in an attempt to ascertain the legislature's intent.[5]

In ascertaining the unit of prosecution, a court will face one of two basic fact patterns. Sometimes, the court must address whether the State can punish a defendant multiple times for the same statutorily

---

**2.** *Garfias v. State*, 424 S.W.3d 54 (Tex.Crim. App.2014) (holding that aggravated robbery by threat and aggravated assault by causing bodily injury are separate offenses for double-jeopardy purposes). A basis for distinction from *Garfias* might be found in the rationale of the concurring opinion in *Garfias*, but the concurring opinion failed to carry the day. As the concurring opinion points out, the Court's opinion in *Garfias* holds that convictions for "aggravated robbery by threat and aggravated assault causing bodily injury ... never ... violates double jeopardy." *Id.* at 64 (Cochran, J., concurring).

**3.** *Vick v. State*, 991 S.W.2d 830, 832 (Tex. Crim.App.1999).

**4.** *Jones v. State*, 323 S.W.3d 885, 888 (Tex. Crim.App.2010); *Vick*, 991 S.W.2d at 832.

*See also Blockburger v. United States*, 284 U.S. 299, 303, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (Second drug sale was a separate offense because it "was not the result of the original impulse, but of a fresh one."); *Ex parte Goodbread*, 967 S.W.2d 859, 860–61 (Tex. Crim.App.1998) (can have multiple prosecutions for different incidents of the same type of sexual assault); *Vick*, 991 S.W.2d at 832–34 (penetration of anus and sexual organ are different units in aggravated sexual assault); *Ex parte Hawkins*, 6 S.W.3d 554, 556 (Tex. Crim.App.1999) (different victims are different units in a robbery); *Ex parte Cavazos*, 203 S.W.3d 333, 335–37 (Tex.Crim.App.2006) (entry is the unit in a burglary).

**5.** *Jones*, 323 S.W.3d at 888 & n. 17. *See also Sanabria v. United States*, 437 U.S. 54, 69–70 & n. 24, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978).

prohibited conduct.[6] This fact pattern is implicated when a court is called upon to determine, for example, whether separate offenses can be prosecuted based upon there being more than one victim, or more than one item taken, or more than one item of contraband possessed.[7] The second fact pattern occurs "when the same statutory section lists multiple methods of committing an offense, and this Court is called upon to determine whether these different methods of commission are different offenses or are merely alternate means of committing the same offense."[8]

In either fact pattern, the best indicator of legislative intent with respect to the unit of prosecution is generally the focus or gravamen of the offense.[9] We have also said that the unit of prosecution "tends to be defined by the offense element that requires a completed act."[10] And we have also explained that we can use grammar as an aid in determining focus or gravamen.[11] But, if after looking at all relevant factors, we find the legislature's intent with respect to the unit of prosecution to be insolubly ambiguous, we should keep in mind that the provisions at issue are in the same statutory section, and we should resolve uncertainty in favor of a conclusion that they are alternative manners and means of committing the same offense.

## 2. Structure of the Robbery Statute and the Capital Murder Analogy

The robbery statute provides:

A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:

> (1) intentionally, knowingly, or recklessly causes bodily injury to another; or

> (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.[12]

Judge Price's position is, at least implicitly, that the two subsections of the robbery statute cited above set forth two separate underlying offenses of assault: assault by threat and assault by causing bodily injury. He further contends that, because assault by threat is a separate offense from assault by causing bodily injury, a robbery that incorporates an assault by threat would be a separate offense from a robbery that incorporates an assault by causing bodily injury.

It is true that we have characterized bodily-injury assault as "a separate and distinct crime" from assault by threat and, also, that an "aggravated assault under each distinct assaultive crime is a separate crime."[13] "[O]nce the underlying type of assault is defined, then either of the aggravating factors set out [in the aggravated-assault statute] may elevate that distinct assaultive crime to a second-degree felony. The aggravating factors or elements are simply the way in which the simple assault becomes a more serious offense."[14]

6. *See, e.g., Jones,* 323 S.W.3d at 886, 893 (each false statement held to be the unit of prosecution, so that three false statements in a single loan application constituted three crimes).

7. *See id.* at 888 n. 16.

8. *Id.*

9. *Id.* at 889.

10. *Id.* at 890.

11. *Id.*

12. TEX. PENAL CODE § 29.02(a).

13. *Landrian v. State,* 268 S.W.3d 532, 540 (Tex.Crim.App.2008).

14. *Id.* This reasoning applies readily to *aggravated* robbery as compared to robbery, *see* TEX. PENAL CODE § 29.03(a), but the question in this case is whether the reasoning also applies to robbery as compared to assault.

But the unit of prosecution for a greater offense is not always wholly defined by the unit of prosecution for an underlying lesser offense. For example, no one would dispute that robbery and aggravated sexual assault are separate offenses, even when those offenses are committed against the same person in the same transaction. But incorporate those lesser offenses into a capital-murder charge [15] and they become alternative methods of committing capital murder rather than separate capital-murder offenses.[16] The State could not obtain two capital-murder convictions based on the killing of a single person during the course of a robbery and an aggravated sexual assault. But the State could limit its theory of capital murder to murder in the course of a robbery and then pursue the aggravated sexual assault as a separate offense. Analytically, that is exactly what happened in *Garfias* with respect to the offense of aggravated robbery: the State limited its theory of aggravated robbery to aggravated robbery by threat and pursued aggravated assault by causing bodily injury as a separate offense.

Is robbery more like aggravated assault or more like capital murder? It is true that we emphasized the assaultive aspect of robbery in *Hawkins* and used that emphasis as part of the reasoning for our later observation in *Jones* that a gravamen element tends to be one that requires a completed act.[17] We explained that the robbery statute does not require that a theft be completed;[18] it requires only that the person be "in the course of committing theft." [19] And in *Hawkins* we characterized robbery as "a form of assault." [20] *Hawkins* and *Jones* both involved the first fact pattern in a units inquiry—whether a person can be punished multiple times for the same statutorily prohibited conduct. In *Hawkins*, the defendant threatened two people but stole only one item,[21] and we held that the unit of prosecution was each victim threatened.[22] In *Jones*, the defendant made three false statements apiece in two loan applications,[23] and we held that the unit of prosecution was each false statement.[24] The observations made in those cases make sense in the context of the fact pattern that existed in those cases, which required counting multiple instances of the same statutorily proscribed behavior. With respect to robbery, if a theft is not complete, there are no stolen items to count. But in every robbery, the assaultive conduct [25] is complete, so there will be a countable number of people who have been subjected to that conduct.

But for reasons discussed below, I think that the theft aspect of robbery seems especially relevant to the second fact pattern as implicated in this case, whether the different underlying assaultive behaviors proscribed are alternative methods of committing the same offense or separate offenses. Although robbery does not require a completed theft, the theft portion of the robbery statute does require activi-

---

**15.** Tex. Penal Code 19.03(a)(2).

**16.** *Davis v. State,* 313 S.W.3d 317, 342 (Tex. Crim.App.2010).

**17.** *See Jones,* 323 S.W.3d at 890.

**18.** *Id.; Hawkins,* 6 S.W.3d at 559–60.

**19.** *See* Tex. Penal Code § 29.02(a).

**20.** *Hawkins,* 6 S.W.3d at 560.

**21.** *Id.* at 555.

**22.** *Id.* at 561.

**23.** 323 S.W.3d at 886.

**24.** *Id.* at 893.

**25.** By assaultive conduct, I do not necessarily mean a completed crime of assault, as I will explain below.

ty: the offender must be in the course of committing theft. The requirement that there be theft activity is a common element to the different statutory methods of committing robbery: the "in the course of committing theft" requirement is listed in the body of subsection (a) while the different underlying assaultive behaviors are listed in subdivisions (1) and (2) under subsection (a). This statutory structure of certain activity serving as a common element is the same as found in the capital-murder statute (in which an intentional or knowing murder is the common element)[26] and the failure-to-stop-and-render-aid statute (in which an accident is the common element),[27] and it is analytically similar to the burglary statute (in which entry is the common element)[28] and to how we have analyzed the felony-murder statute (discussing death of an individual as the common element shared by underlying felonies in a felony-murder prosecution).[29]

By contrast, activity that serves as a common element is absent from several statutes in which the different methods of committing an offense have been construed as separate offenses. For example, in the indecency-with-a-child statute, the body of subsection (a) simply outlines "with a child" younger than age 17 and then enumerates subdivisions that specify prohibited conduct.[30] In the aggravated-sexual-assault statute, the body of subsection (a) simply states that "[a] person commits an offense."[31] In fact, one has to drop all the way down to subdivision (i) before the statute outlines any sort of activity, and at that level, the statute outlines a number of alternative acts.[32] Likewise, the assault statute simply provides introductory language in the body of subsection (a) and then outlines the relevant threat and bodily-injury elements in subdivisions (1) and (2).[33] The only common element provided in the aggravated-assault statute is that an assault must occur, which then takes us back to the absence of a common element in the assault statute.[34] Thus, in terms of structure, the robbery statute is more like the capital-murder statute than the aggravated-assault statute.

There are differences. The theft element in the robbery statute is framed in the passive voice, in the same manner, in fact, as the *underlying* offenses in the capital-murder statute.[35] In this sense, the order of the statutes is inverted: the capital-murder statute contains an actively worded common element with passively

26. *See* Tex. Penal Code § 19.03(a); *Davis*, 313 S.W.3d at 342.

27. *See* Tex. Transp. Code § 550.021; *Huffman v. State*, 267 S.W.3d 902, 907–09 (Tex.Crim. App.2008).

28. *See* Tex. Penal Code § 30.02; *Cavazos*, 203 S.W.3d at 335–37.

29. *See Contreras v. State*, 312 S.W.3d 566, 585 (Tex.Crim.App.2010).

30. *See* Tex. Penal Code § 21.11(a); *Loving v. State*, 401 S.W.3d 642, 647–49 (Tex.Crim.App. 2013).

31. *See* Tex. Penal Code § 22.021(a); *Gonzales v. State*, 304 S.W.3d 838, 846–49 (Tex.Crim. App.2010).

32. *See* Tex Penal Code § 22.021(a).

33. See *id.* § 22.01(a) ("A person commits an offense if the person...."); *Landrian*, 268 S.W.3d at 540.

34. *See* Tex. Penal Code § 22.02(a); *Landrian*, 268 S.W.3d at 540.

35. *Compare* Tex Penal Code § 29.02(a) *with id.* § 19.03(a)(2) (the latter providing for the underlying offenses that "the person intentionally commits the murder in the course of committing or attempting to commit kidnapping, burglary...." etc.).

worded "in the course of" underlying elements while the robbery statute contains a passively worded "in the course of" common element with actively worded underlying elements. This inversion of the passively worded elements helps explain why the assaultive elements in the robbery statute are part of the gravamina of robbery while the underlying offenses in the capital-murder statute are not considered part of the gravamina for capital murder.[36] Nevertheless, by making the theft aspect of robbery a common element, the legislature has accorded it more prominence than is the case with the similarly worded underlying elements of capital murder.

### 3. Absence from Aggravated Assault Statute

Moreover, if the legislature had intended for robbery to be *simply* an aggravated form of assault, it could have made the fact that the assault was committed in the course of a theft an aggravating circumstance in the aggravated-assault statute.[37] And to preserve enhanced punishment for what is now termed *aggravated* robbery, the legislature could have provided for enhanced punishment within the aggravated-assault statute for the confluence of multiple aggravating circumstances as it has done for other circumstances in the aggravated-assault statute[38] and as it has done for the offense of aggravated sexual assault.[39] But the legislature has chosen not

to treat what is now the offense of robbery as simply an aggravated version of assault. In fact, robbery is not even in the same title, much less the same chapter, as the offense of assault.[40] We did not find that fact to be controlling with respect to the issue decided in *Hawkins*,[41] but it is a relevant fact to consider.

### 4. Completed Assault Not Required

Another factor that mitigates against a lockstep analysis of using the unit of prosecution for assault for all purposes for the offense of robbery is that a completed assault is not always required for a robbery. This conclusion is based upon an important difference between the wording of the "threat" provision in the robbery statute and the "threat" provision in the assault statute. The "threat" provision of the assault statute provides that a person commits an offense if he "intentionally or knowingly threatens another with imminent bodily injury."[42] The counterpart provision in the robbery statute provides that a person commits an offense if he "intentionally or knowingly threatens *or places* another *in fear of* imminent bodily injury or death."[43] As can be seen, the robbery statute contains the phrase "places . . . in fear of" that is not contained in the assault statute.

In *Williams v. State*, the First Court of Appeals construed this difference in lan-

---

**36.** *See Davis*, 313 S.W.3d at 342 (the existence of multiple victims for *underlying* offenses is not relevant to determining the number of capital murders committed).

**37.** *See* TEX. PENAL CODE § 22.02(a)(1), (2) (aggravating circumstances).

**38.** *See id.* § 22.02(b) (circumstances under which aggravated assault is a first-degree felony).

**39.** *See id.* § 22.021(f)(2) (enhanced punishment if victim was younger than 14 and there

was another aggravating circumstance, provided elsewhere in the statute).

**40.** *Compare id.*, Title 5 (Offenses Against the Person), Chapter 22 (Assaultive Offenses) *with id.*, Title 7 (Offenses Against Property), Chapter 29 (Robbery).

**41.** 6 S.W.3d at 560.

**42.** TEX. PENAL CODE § 22.01(a)(2).

**43.** *Id.* § 29.02(a)(2) (emphasis added).

guage to mean that a threat is not actually required to establish robbery:

> We note that an element of the crime of robbery, *"places* another in fear of imminent bodily injury," TEX. PENAL CODE ANN. § 29.02(a)(2) (Vernon 1989) (emphasis added), differs from an often compared, but vastly dissimilar element for the crime of assault, *"threatens* another with imminent bodily injury," TEX. PENAL CODE ANN. § 22.01(a)(2) (Vernon 1989) (emphasis added). The general, passive requirement that another be "placed in fear" cannot be equated with the specific, active requirement that the actor "threaten another with imminent bodily injury." Under the "placed in

fear" language in section 29.02 of the Texas Penal Code, the factfinder may conclude that an individual fear or was "placed in fear," in circumstances where no actual threats were conveyed by the accused.[44]

In published opinions, the Third, Sixth, and Fourteenth courts of appeals have followed *Williams.*[45] In *Wilmeth v. State,* the Twelfth Court of Appeals indicated that "a menacing glance" could be sufficient to show that the defendant placed a victim in fear of imminent bodily injury.[46] The *Williams'* construction of the robbery statute appears to be the unanimous view of the courts of appeals that have addressed the issue.[47]

---

44. 827 S.W.2d 614, 616 (Tex.App.-Houston [1st Dist.] 1992) (emphasis in original).

45. *Welch v. State,* 880 S.W.2d 225, 227 (Tex. App.-Austin 1994); *Howard v. State,* 306 S.W.3d 407, 410–11 (Tex.App.-Texarkana 2010); *Burton v. State,* 230 S.W.3d 846, 852 (Tex.App.-Houston [14th Dist.] 2007). *See also Boston v. State,* 373 S.W.3d 832, 840 (Tex.App.-Austin 2012) ("Moreover, '[b]y defining robbery to be theft plus *either* threatening or placing another in fear, [the robbery] statute demonstrates that the term "threaten" means something other than placing a person "in fear of imminent bodily injury or death." ' ") (quoting from *Olivas v. State,* 203 S.W.3d 341, 345–46 (Tex.Crim.App.2006), emphasis in *Olivas* and *Boston,* brackets in *Boston* ).

46. 808 S.W.2d 703, 706 (Tex.App.-Tyler 1991).

47. *See* authorities cited above. If one includes unpublished opinions, thirteen of the fourteen courts of appeals have addressed and endorsed the *Williams* view. *See Ross v. State,* 2012 WL 3599948, 2012 Tex.App. LEXIS 7068 (Tex.App.-Fort Worth August 23, 2012) (not designated for publication) (citing *Burton* for the proposition that the defendant's informing teller that this is a "holdup" and demanding money reasonably placed the teller in fear of bodily injury); *Reed v. State,* 2012 WL 662327, *4, 2012 Tex.App. LEXIS

1650, *11 (Tex.App.-Waco February 29, 2012) (not designated for publication) ("Under the 'placed in fear' language of section 29.02, the fact-finder may conclude that an individual was 'placed in fear' in circumstances where no actual threats are conveyed."); *Britton v. State,* 2011 WL 2859821, *1, 2011 Tex.App. LEXIS 5421, *3 (Tex.App.-Dallas July 15, 2011) (not designated for publication) ("If no actual threats were conveyed by the defendant, the factfinder must conclude the victim 'perceived fear' or was 'placed in fear' by the circumstances, including the defendant's words and actions."); *Hines v. State,* 2010 WL 3279399, *5, 2010 Tex.App. LEXIS 6739, *12 (Tex.App.-Corpus Christi August 19, 2010) (not designated for publication) ("Under the 'placed in fear' language contained in penal code section 29.02, the factfinder may conclude that an individual was 'placed in fear' in circumstances when no actual threats are conveyed."); *Barrow v. State,* 2010 WL 2160370, *3, 2010 Tex.App. LEXIS 4128, *7 (Tex.App.-Amarillo May 28, 2010) (not designated for publication) ("Under the 'placed in fear' language in section 29.02 of the Penal Code, the factfinder may conclude that an individual perceived fear or was 'placed in fear,' in circumstances where no actual threats were conveyed by the accused."); *Mesquiti v. State,* 2005 WL 16192, *1, 2005 Tex.App. LEXIS 39, *2–3 (Tex.App.-San Antonio January 5, 2005) (not designated for publication) ("The general, passive requirement that another be 'placed in fear' cannot be

That view appears to be well-taken. The theft aspect of robbery creates a situation in which fear is more likely to occur, even in the absence of an actual threat. A person who has a gun in a holster, gives the store clerk a menacing glance intended to place the clerk in fear of death, and says, "Give me your money," has committed a robbery even if an actual threat has not been conveyed.[48] Likewise, a robber could threaten one individual in a store while knowing that others present will have heard the threat.[49] The robber may not have threatened these other individuals, but if he knew the others would be placed in fear, then he has (*à la Hawkins*) committed a robbery against them.

### 5. *Conclusion*

The above discussion convinces me that the conduct of being in the course of committing a theft is a gravamen of robbery, though it is not the controlling gravamen in every situation. None of this discussion undermines our prior holding in *Hawkins* that a robbery occurs with respect to each individual who is subjected to assaultive conduct (in the broad robbery sense). But this discussion leads me to conclude that the "threat" and "bodily" injury elements of robbery are simply alternative methods of committing a robbery. Thus, the unit of prosecution in a robbery case is each individual subjected to assaultive conduct during the course of a theft.

Although some significant factors can be cited to support a conclusion that the different methods of committing robbery are different offenses, these factors, at best, counterbalance other factors that weigh against such a conclusion—muddying the issue of how the unit of prosecution should be resolved. Given that state of affairs,

equated with the specific, active requirement that the actor 'threaten another with imminent bodily injury.' Under the 'placed in fear' language, the factfinder may conclude that an individual perceived fear or was 'placed in fear,' in circumstances where no actual threats were conveyed by the accused.") (citations omitted); *Bradley v. State,* 2004 Tex. App. LEXIS 866, *3 (Tex.App.-Beaumont January 28, 2004) (not designated for publication) ("Under the 'placed in fear' language, the factfinder may find that an individual perceived fear in a situation where the accused made no actual threats."); *Lavender v. State,* 2003 WL 22211345, *2, 2003 Tex.App. LEXIS 8367, *6 (Tex.App.-Eastland Sept. 25, 2003) (not designated for publication) ("The accused need not expressly threaten another or display a weapon to commit robbery. It is sufficient to constitute robbery if the accused places the complainant in fear of bodily injury or death to the degree that 'reason and common experience' will likely induce the complainant to part with his property against his will.") (citations to *Williams* and other cases omitted); *Adkins v. State,* 2003 WL 1524138, 2003 Tex.App. LEXIS 2644 (Tex.App.-Fort Worth March 24, 2003) (not designated for publication) (Under assault statute, "there must at least be evidence of some overt conduct by the defendant that suggests he acted with an intent to threaten"—citing *Williams* as "comparing robbery statute that requires 'placing' another in fear with the assault statute.").

48. *See Plummer v. State,* 410 S.W.3d 855, 862 (Tex.Crim.App.2013) ("If one exhibits a deadly weapon—or, in the words of *Patterson [v. State,* 769 S.W.2d 938 (Tex.Crim.App.1989) ], 'consciously displays' it—without overtly using it to harm or threaten while committing a felony, the deadly weapon still provides intimidation value that assists the commission of the felony."); *Boston v. State,* 410 S.W.3d 321, 326–27 (2013) ("[B]randishing a firearm is not the only way in which a person can be threatened or placed in fear in accordance with the [robbery] statute. We believe that Hemphill's conduct in reaching over the counter and taking money from the cash register was threatening because his actions were a 'menacing indication of (something dangerous, evil, etc.)' ").

49. *See Howard v. State,* 333 S.W.3d 137, 139 (Tex.Crim.App.2011) (discussing *Rayford v. State,* 423 S.W.2d 300 (Tex.Crim.App.1968), which involved a situation in which a wife

we should accord determinative weight to the legislature's decision to place these different means of committing robbery in the same statutory section and hold that they are alternative methods of committing the offense.

## B. Remedy

As has been explained above, the State could have avoided violating double-jeopardy if, for each victim, instead of obtaining two convictions for aggravated robbery, the State had obtained one conviction for aggravated robbery and one conviction for aggravated assault, as occurred in *Garfias*. In *Bowen v. State*, we held in the sufficiency-of-the-evidence context that an appellate court has the power to reform a greater offense to a lesser-included offense even if the lesser-included offense had not been requested or submitted to the finder of fact.[50] The question arises whether, consistent with *Bowen*, an appellate court

ought to reform a conviction instead of vacating the conviction entirely, if reformation would obviate a double-jeopardy violation. Now that we have found a double-jeopardy violation, the parties will have the opportunity to address the appropriate remedy on remand to the court of appeals. Discussion of the appropriate remedy would include whether reformation is appropriate and, possibly, whether the State wishes to waive any right to reformation.[51] With these comments, I join the opinion of the Court.

COCHRAN, J., filed a concurring opinion in which ALCALA, J., joined.

This is not a simple issue. As Judge Moylan has noted, "it is sometimes the simplest of crimes that are the most difficult to master. [Continuing criminal enterprises and conspiracies] are as child's play to the familiar standby of assault and battery."[1] Although appellant was

witnessed the robber threatening her husband and thus was also a victim of robbery).

**50.** 374 S.W.3d 427 (Tex.Crim.App.2012).

**51.** It is possible that the State will not wish to undergo the time and expense of a new punishment hearing on reformed offenses, especially since the punishment for such offenses would run concurrently with the retained charged offenses. In the plea-bargain context, we have indicated that the State can waive its right to further proceedings by agreeing to the striking of a conviction as the remedy for a double-jeopardy violation. *Ex parte Ervin v. State*, 991 S.W.2d 804, 817 (Tex.Crim.App.1999) ("[T]he State does not request that the guilty plea be set aside, nor does the State request that we try to effectuate the agreement by reforming one of the convictions to a lesser-included offense that would not be considered the 'same' offense. Instead the State has suggested in its answer that we vacate the first conviction.... We have implied that the State may be able to waive an illegal portion of a judgment and maintain the remainder of the plea agreement.... We expressly hold that today and find that the State has done so in this case.").

**1.** *Lamb v. State*, 93 Md.App. 422, 613 A.2d 402, 404 (1991). In *Lamb*, Judge Moylan examined exhaustively the common-law development of "assault" and "battery" in explaining why the particular "assault" in this domestic violence case (in which the defendant repeatedly pointed a gun at the victim's head and threatened to kill her) did not merge with the various "battery" incidents (in which he hit or held her against her will). *Id.* at 404–20. The several times that he threatened the victim with a gun and the three times that he used physical force against her during the three-and-a-half-hour ordeal were separated in time, place, and manner. *Id.* at 420–25. However, Judge Moylan noted that

a more difficult question would be posed if the threatened shooting (assault) were followed by an actual shooting (battery). There, a merger of the threatening conduct into the physical consummation of the threat would not, under federal constitutional law, be mandated by *Blockburger*. Under Maryland law, on the other hand, it might well be required under the extended "rule of lenity" recently promulgated by the Court of Appeals....

charged with various counts of aggravated robbery, the legal issue concerns the distinction between "assault" and "battery."

Remember that old law-school common-law concept of assault and battery? An assault was the attempt to hit or injure someone and battery was the actual hitting or injuring of that person.[2] Both were crimes, but a person could not be charged with two distinct offenses for a single attempt to hit and then a successful hitting or injury of one person in one incident.[3] Under the old common law, assault was an unconsummated battery, and battery was a consummated assault.[4] Every battery included an assault, but an assault did not include a battery.[5] Eventually, the com-

---

Analytically, the situation would be further muddied by the fact that where an apprehended threat is then successfully carried out, the antecedent assault is present in both of its manifestations. It is, at the same time, both an attempted battery and a threatened battery. The first would merge under the Federal Constitution. The second would merge only under Maryland's extended "Rule of Lenity." It is not a simple subject. *Id.* at n. 6.

2. *See Olivas v. State*, 203 S.W.3d 341, 344 (Tex.Crim.App.2006) (discussing common-law doctrines of assault and battery). Under the early common law, the crime of "assault" and the tort of "assault" were entirely distinct. Criminal assault was an attempted battery-a missed hit or injury. The civil tort of assault was an intentional act of placing another in fear of receiving an immediate battery-a threat to hit or injure. ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 159 (3d ed.1982). For example, "[i]f, with the intention of hitting X, D wrongfully threw a stone that X barely managed to dodge, then D would have been guilty of a criminal assault because he had attempted to commit a battery, and he would also have been liable in civil action of trespass for assault because he had wrongfully placed X in apprehension of physical harm." *Id.*

3. PERKINS & BOYCE, *supra* note 2, at 160 (noting that "one who has committed a battery is frequently prosecuted for assault and battery. This does not mean that two offenses are charged in separate counts of the accusatory pleading, but that one offense is charged in one count under the name of 'assault and battery' ").

4. *See, e.g., Anderson v. Crawford*, 265 F. 504, 507 (8th Cir.1920) ("While a battery always included an assault, assaults often fall short of a battery. An assault is an attempt, which, if consummated, would result in a battery.").

5. *See Hall v. State*, 309 P.2d 1096, 1100 (Okla. Crim.App.1957) (" 'Battery' includes assault, but 'assault' does not include battery. When the assault culminates in a battery, the offense is assault and battery, and the prosecution should be commenced for that grade of assault and battery which is reasonably supported by the state's evidence.") (quoting *Smith v. State*, 79 Okla.Crim. 1, 151 P.2d 74, 76 (1944)). As the New Jersey Supreme Court explained, under the common law,

[a]ssault covered every "attempt or offer with force and violence, to do a corporal hurt to another," 1 HAWKINS, PLEAS OF THE CROWN, 113. Blackstone defines it as "an attempt or offer to beat another, without touching him," 3 COMMENTARIES 120, while according to Wharton it is "an apparent attempt by violence to do corporal hurt to another," 1 CRIMINAL LAW (10th ed.), sec. 603. On the other hand a battery is a "consummated or completed assault," 2 BURDICK, THE LAW OF CRIME, sec. 350. It necessarily includes an assault. The offense is usually referred to as an assault and battery and at common law meant any unlawful bodily harm done to another person. "It seems that any injury whatsoever, be it never so small, being actually done to the person of a man, in an angry, or revengeful, or rude, or insolent manner, as by spitting in his face, or any way touching him in anger, or violently justling him out of the way, are batteries in the eye of the law." 1 HAWKINS, PLEAS OF THE CROWN, 134. "The law cannot draw the line between different degrees of violence, and therefore totally prohibits the first and lowest stage of it; every man's person being sacred, and no other having right to meddle with it, in even the slightest manner." 3 BLACKSTONE'S COMMENTARIES 120. Assault and battery at common law ranged from these minor offenses, which nevertheless the law cannot

mon-law concept of the crime of assault expanded from attempted battery (a missed hit) to include the common-law tort concept of a threat to hit or injure (the pointing of a gun or words such as "I will hit you").[6]

Under more modern statutes, such as the Model Penal Code[7] and Texas law, both the common-law crime of assault and that of battery are covered under the single offense of assault. For example, Section 22.01 of the Penal Code defines an assault as an offense if a person

(1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse (common-law battery); or

(2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse (common-law assault).[8]

Relevant to our purposes,[9] these are two separate ways of committing an assault and they are, in fact, separate offenses—one involving prohibited conduct (a threat) and the other involving a prohibited result (bodily injury).[10] One may threaten a bodily injury without actually carrying through on that threat; one may cause bodily injury without making any overt threat; and one may threaten bodily injury and carry through with that threat.[11]

---

afford to overlook, to violence falling just short of manslaughter or murder. *State v. Maier*, 13 N.J. 235, 99 A.2d 21, 24 (1953).

**6.** *See* PERKINS & BOYCE, *supra* note 2, at 161–62 (noting that, "[w]hile few jurisdictions have abandoned the original basis for establishing a criminal assault in the absence of statute, there has been a tendency in many to add the tort theory as an additional ground."); WAYNE R. LAFAVE & AUSTIN W. SCOTT, CRIMINAL LAW 693 (2d ed. 1986) ("[M]any jurisdictions have extended the scope of the crime of assault to include, *in addition to* (not as an alternative to) the attempted-battery type of assault, the tort concept of the civil assault, which is committed when one, with intent to cause a reasonable apprehension of immediate bodily harm (though not to inflict such harm), does some act which causes such apprehension.") (footnote omitted).

**7.** Model Penal Code § 211.1 ("Assault"). That statute reads as follows:
(1) **Simple Assault.** A person is guilty of assault if he:
  (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or
  (b) negligently causes bodily injury to another with a deadly weapon; or
  (c) attempts by physical menace to put another in fear of imminent serious bodily injury.
Simple assault is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.
(2) **Aggravated Assault.** A person is guilty of aggravated assault if he:
  (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or
  (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.
Aggravated assault under paragraph (a) is a felony of the second degree; aggravated assault under paragraph (b) is a felony of the third degree.

**8.** TEX. PENAL CODE § 22.01(a)(1), (2).

**9.** Section 22.01 contains a third method of assaultive conduct—"offensive touching"—which was a misdemeanor battery at common-law and is a Class C misdemeanor in Texas. TEX. PENAL CODE § 22.01(a)(3). That provision is not pertinent here, except, of course, that every assault involving bodily injury includes an "offensive" touching, but an offensive touching does not necessarily include a bodily-injury assault.

**10.** *See Landrian v. State*, 268 S.W.3d 532, 536 (Tex.Crim.App.2008) (stating that, in Section 22.01, the Texas Legislature enacted "three separate and distinctive assaultive crimes").

**11.** *See generally, Lamb v. State*, 93 Md.App. 422, 613 A.2d 402, 404–20 (1991).

At bottom, the issue in the present case is whether double jeopardy prevents convictions for both assault by threat and assault by bodily-injury when a person first threatens to injure another person and then carries through on that threat.[12] Suppose, for example, that Dangerous Dan holds a bat above his head as he tells Suzie Q., "I'm going to beat you up." She shrieks, and he promptly bangs her with the bat. Is that one crime or two? Common sense says that this is just one crime. And when assault by bodily injury—"battery"—includes an assault by threat—"assault"—double jeopardy would prevent convictions for both when they occur against the same person at the same time.[13] The assault is "merged" or "subsumed" into the completed battery.[14] Conversely, if Dan threatened Suzie with a bat in the bedroom and, when she shrieked, he put the bat down, but after she walked out of the room, he picked up the bat, followed her, and banged her with the bat in the kitchen, double jeopardy would not prevent two convictions because a jury could find that they were separate incidents.[15]

12. Although appellant was convicted of two counts of aggravated robbery committed against Andrew Chaney and two counts of aggravated robbery committed against James Barker, the legal issue is whether double jeopardy bars dual convictions for aggravated robbery of X by *threat* (with a deadly weapon) and aggravated robbery of X by causing (serious) *bodily injury* when they are committed as part of the same criminal act (first a threat, then carrying through with that threat). The double-jeopardy issue, then, depends not upon the robbery statute or the aggravated robbery statute, but upon the simple assault statute, Section 22.01(a)(1), (2). *See Snowden v. State*, 321 Md. 612, 583 A.2d 1056, 1059 (1991) ("Robbery is a compound larceny. It is a larceny from the person accomplished by either an assault (putting in fear) or a battery (violence). Therefore, either combination produces a robbery."). Although the robbery provision contains an additional method of "assault" by "plac[ing] another in fear of imminent bodily injury or death" as well as by threatening a person, (Section 29.02(a)(2)), that distinction does not make a difference in the present analysis.

13. *See, e.g., State v. Bolarinho*, 850 A.2d 907, 909–11 (R.I.2004) (double jeopardy barred convictions for both assault with a deadly weapon and assault resulting in serious bodily injury when both offenses arose from a single fight in which the victim was repeatedly kicked).

14. *See, e.g., McGhee v. State*, 133 So.3d 1137, 1138 (Fla.Dist.Ct.App.2014) ("McGhee contends that because the burglary of a dwelling with assault and battery, aggravated assault with a firearm, and battery convictions involve the same victim and occurred in the same incident, the convictions for battery and aggravated assault with a firearm violate the constitutional prohibition against double jeopardy. McGhee is correct. We, therefore, reverse his conviction for aggravated assault with a firearm because it is subsumed into the greater offense of burglary of a dwelling with an assault or battery while armed with a firearm.... The conviction for battery must also be reversed because a conviction for both burglary with an assault or battery and simple battery arising from the same criminal episode also violates double jeopardy."); *Latimer v. State*, 44 So.3d 1239, 1240 (Fla.Dist.Ct.App. 2010) (double jeopardy prevented convictions for both robbery with a deadly weapon and simple assault committed during robbery); *Cronce v. State*, 216 P.3d 568, 570 (Alaska Ct.App.2009) (double jeopardy prohibited convictions for assault by threat and assault by causing bodily injury against same victim during one incident with same dangerous instrument); *Russo v. State*, 804 So.2d 419, 421–22 (Fla.Dist.Ct.App.2001) (double jeopardy barred two convictions for assault by threatening victim with a beer bottle and assault by swinging a shovel at him when both acts were all part of a single, continuous assault); *Gresham v. State*, 725 So.2d 419, 420 (Fla.Dist.Ct.App.1999) (woman who threatened to kill her husband with a shotgun and then immediately grabbed a knife and stabbed him could not be convicted of the two types of assault as the acts occurred in a single, uninterrupted sequence and comprised one criminal act).

15. *See, e.g., State v. Fischer*, —— N.H. ——, 82 A.3d 891, 900 (2013) (defendant's rights

The line between "merged" or "subsumed" offenses involving multiple assaults or batteries, is not easy to draw. As one judge has noted,

> Although these [assault and battery] are common law crimes, and do not, therefore, involve legislative intent, it is appropriate in determining the propriety of cumulative punishments to employ the same basic standards of common sense and fairness that largely influence the outcome of legislative intent cases. Certainly, where one person pummels another with his fists for several minutes, the law would not countenance a separate punishment for each time a blow is landed. On the other hand, if one person were to inflict various types of torture upon another during the course of the day, allowing the victim to recover consciousness between each assault, it would seem appropriate to permit separate convictions for the separate insults to the person of the victim.[16]

Dual convictions for making the threat and then the immediate carrying out of that threat to harm an assault victim is not barred by the *Blockburger*[17] "same elements" test because each subsection of the assault statute contains an element not contained by the other subsection ("bodily injury" in subsection (a)(1) and "threatens" in subsection (a)(2)). Nonetheless, I agree with Presiding Judge Keller that "the 'threat' and 'bodily injury' elements of [assault and] robbery are simply alternative methods of committing [an assault or] a robbery."[18] That is because the unit of prosecution for assault is *either or both* an "assault" (threat) or a "battery" (bodily injury) upon one person at one time and place. Therefore, the unit of prosecution for robbery is *either or both* an "assault" or a "battery" upon one person at one time and place during the course of a theft.[19] And, finally, the unit of prosecution for aggravated robbery is *either or both* an "assault" with a deadly weapon or a "battery" that causes serious bodily injury upon one person at one time and place during the course of a theft.

In sum, I think that, because the State proved only one unit of assaultive conduct—a threat to harm with a deadly weapon immediately followed by causing serious bodily injury—against each robbery victim at one time and place, double jeopardy principles bar two convictions for robbing Mr. Barker and two convictions for robbing Mr. Chaney. I therefore respectfully join in the majority's resolution of this case.

against double jeopardy were not violated when he was convicted of two separate incidents of assault, the first occurring in the living room and the second in the kitchen); *State v. Leavitt*, 165 N.H. 32, 66 A.3d 1218, 1219 (2013) (no double jeopardy violation when evidence showed that defendant kicked police officer once when he came to defendant's home and then again at hospital); *People v. Lugo*, 214 Mich.App. 699, 542 N.W.2d 921, 926 (1995) (defendant's convictions for assault by pointing a gun at police officer and assault by hitting police officer with a broom did not violate double jeopardy principles because defendant first assaulted officer with the broom, then put it down, took officer's gun and pointed it at him; assault with the broom was completed before assault with gun began).☉

16. *Snowden v. State*, 321 Md. 612, 583 A.2d 1056, 1061 (1991) (McAuliffe, J., concurring).

17. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

18. *Supra,* Concurring Op. at 434 (Keller, P.J., concurring).

19. *Snowden v. State*, 321 Md. 612, 583 A.2d 1056, 1059 (1991) (robbery is theft from a person accompanied by either a threat to harm or actual force).

PRICE, J., filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined.

The appellant was convicted of five counts of aggravated robbery committed against a total of three different victims, all stemming from events that occurred during the course of a single home invasion.[1] Two of the convictions, corresponding to Counts I and II of the indictment, involved separate theories of the underlying robbery (robbery by causing bodily injury versus robbery by threatening or placing another in fear of imminent bodily injury or death) perpetrated against one Andrew Chaney.[2] Two other convictions, corresponding to Counts III and IV of the indictment, involved the same two theories of the underlying robbery (robbery by causing bodily injury versus robbery by threatening or placing another in fear of bodily injury or death) perpetrated against one James Barker.[3]

---

1. *See* TEX. PENAL CODE § 29.03(a)(1)–(2) ("A person commits [aggravated robbery] if he commits robbery as defined in Section 29.02, and he . . . causes serious bodily injury to another [or] uses or exhibits a deadly weapon[.]"); *id.* § 29.02(a)(1)–(2) ("A person commits an offense if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally, knowingly, or recklessly causes bodily injury to another; or. . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death.").

2. Counts I and II of the indictment read:

> **THE GRAND JURY,** for the County of Travis, State of Texas, duly selected, empanelled [sic], sworn, charged, and organized as such at the July, 2009 Term, AD., of the 390th Judicial District Court for said County, upon its oath presents in and to said Court at said term, that Michael Cooper, on or about the 16th day of July, 2009, and before the presentment of this Indictment, in the County of Travis, and State of Texas, did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally, knowingly, or recklessly cause serious bodily injury to Andrew Chaney by shooting his hand, and the said Michael Cooper did then and there use or exhibit a deadly weapon, to-wit: a firearm and a bat,
>
> **COUNT II**
> It is further presented in and to said court that on or about 16th day of July, 2009, in the County of Travis, and State of Texas, Michael Cooper did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or

knowingly threaten or place Andrew Chaney in fear of imminent bodily injury or death, and the said Michael Cooper did then and there use or exhibit a deadly weapon, to-wit: a firearm and a bat[.]

It will be observed that Count I actually alleged *two* theories to elevate the robbery to an aggravated robbery: both *serious* bodily injury *and* the use or exhibition of a deadly weapon. Count II alleged only the use or exhibition of a deadly weapon.

3. Counts III and IV of the indictment read:

> **COUNT III**
> It is further presented in and to said court that on or about 16th of July, 2009, in the County of Travis, and State of Texas, Michael Cooper did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally, knowingly, or recklessly cause serious bodily injury to James Barker by hitting him in the head with a firearm or a bat, and the said Michael Cooper did then and there use or exhibit a deadly weapon, to-wit: a firearm and a bat,
>
> **COUNT IV**
> It is further presented in and to said court that on or about 16th day of July, 2009, in the County of Travis, and State of Texas, Michael Cooper did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally or knowingly threaten or place James Barker in fear of imminent bodily injury or death, and the said Michael Cooper did then and there use or exhibit a deadly weapon, to-wit: a firearm and a bat[.]

As with Count I, Count III actually alleged *two* theories to elevate the robbery to an ag-

On appeal, the appellant argued that he could not be convicted twice for robbing Chaney; nor could he be convicted twice for robbing Barker. Instead, the appellant maintained, he could only be punished for as many robberies as there were victims.[4] In the appellant's view, this Court's opinion in *Ex parte Hawkins* essentially occupied the field when it comes to determining allowable units of prosecution for robbery offenses when we held that the State may punish for as many victims as were assaulted during an incident.[5] From this premise the appellant reasoned that, while he could be convicted separately of robbing both Chaney and Barker, he could only be convicted of robbing each of them once, for a total of two convictions. The Third Court of Appeals rejected this argument.[6] The court of appeals held that, consistently with this Court's precedents, the number of victims should not be regarded as the *only* determinant in a units-of-prosecution analysis.[7] Accordingly, the court of appeals affirmed all of the convictions.[8] We granted the Appellant's petition for discretionary review to decide whether the court of appeals appropriately interpreted the scope of *Hawkins* to be so limited.[9] I believe the court of appeals correctly resolved this issue and would affirm its judgment.

The court of appeals was correct to hold that *Hawkins* is not the be-all and end-all of a units-of-prosecution analysis in every conceivable robbery case. The issue we addressed in *Hawkins* was circumscribed: "[H]ow many robbery prosecutions may be brought when an actor assaults more than one person in the course of stealing one item of property[?]"[10] We simply did not address the *separate* question of how many times an actor may be convicted when, in a single action, he assaults the *same* person in more than one of the statutorily prescribed ways in which such an assault may constitute a robbery. This latter question is properly analyzed under our cases that describe how to determine legislative intent with respect to allowable units of prosecution when an actor's conduct simultaneously violates more than one subpart of the same penal statute against the same victim.[11] Assuming, therefore, that the allegations in Counts I and II of the indict-

gravated robbery: both *serious* bodily injury *and* the use or exhibition of a deadly weapon. Like Count II, Count IV alleged only the use or exhibition of a deadly weapon.

4.  Count V of the indictment, upon which the appellant was also convicted, alleged that he committed aggravated robbery against a third individual, Alvin Duran. The appellant does not argue that this conviction is jeopardy barred. Thus, he argues that he could only be punished for three offenses: one each for the robberies of Chaney, Barker, and Duran.

5.  Appellant's Brief on Direct Appeal at 25–36 (citing *Ex parte Hawkins*, 6 S.W.3d 554 (Tex. Crim.App.1999)).

6.  *Cooper v. State*, 373 S.W.3d 821 (Tex.App.-Austin 2012).

7.  *Id.* at 828.

8.  *Id.* at 832.

9.  *See* Appellant's Brief on Petition for Discretionary Review at 34 ("Petitioner asks this Court to reaffirm its holding in *Ex parte Hawkins*, supra and reaffirm that the allowable unit of prosecution in a robbery case is each victim.").

10.  *Hawkins*, 6 S.W.3d at 554.

11.  *E.g.*, *Vick v. State*, 991 S.W.2d 830, 832–33 (Tex.Crim.App.1999); *Haight v. State*, 137 S.W.3d 48, 50 (Tex.Crim.App.2004); *Gonzales v. State*, 304 S.W.3d 838, 847–49 (Tex.Crim. App.2010); *Jones v. State*, 323 S.W.3d 885, 889–93 (Tex.Crim.App.2010); *Harris v. State*, 359 S.W.3d 625, 629–32 (Tex.Crim.App. 2011); *Loving v. State*, 401 S.W.3d 642, 646–49 (Tex.Crim.App.2013). *Cf. Pizzo v. State*, 235 S.W.3d 711, 714–19 (Tex.Crim.App. 2007); *Landrian v. State*, 268 S.W.3d 532, 541 (Tex.Crim.App.2008).

ment allege discrete, statutorily alternative ways in which the appellant's act may have constituted an assault against Chaney (and Counts III and IV likewise allege discrete, statutorily alternative ways in which the appellant's act may have constituted an assault against Barker), then the question of how many times the appellant may be punished for robbing Chaney based upon that act (and of how many times he may likewise be punished for robbing Barker based on that act) depends upon how we parse the language of Section 29.02 of the Penal Code in order to gauge the gravamen of the offense. That is the way we have determined legislative intent—the lynchpin of any multiple-punishments double jeopardy inquiry—in this context.[12]

In *Hawkins* we reasoned that, "[s]ince robbery is a form of assault, the allowable unit of prosecution for robbery should be the same as that for an assault."[13] But we have never said that the number of victims is the *only* indicium of legislative intent with respect to allowable units of prosecution for the offense of assault. And, with respect to the related question of whether a jury must be unanimous with respect to its verdict in an assault prosecution,[14] we concluded in *Landrian* that the Legislature intended that alternative statutory methods of committing assault should be regarded as discrete offenses, requiring jury unanimity with respect to each one separately.[15] I see no reason why we would not say the same thing with respect to the assault statute when it comes to a double jeopardy units-of-prosecution analysis—that robbery by causing bodily injury and robbery by threatening or placing the victim in fear of bodily injury or death are discretely actionable offenses. Indeed, for all intents and purposes, we recently *did* say this.[16] Since the allowable units of prosecution for robbery "should be the same as that for an assault,"[17] it is more than plausible to conclude, as the court of appeals did in this case, that the appellant may constitutionally be punished for as many statutorily alternative ways that he robbed both Chaney and Barker as the evidence will support.

Section 29.02(a) of the Penal Code defines the offense of simple robbery. It reads:

(a) A person commits an offense if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property, he:

(1) intentionally, knowingly, or recklessly causes bodily injury to another; or

(2) intentionally or knowingly threatens or places another in fear of

---

**12.** In *Hawkins* itself we observed that "the issue of multiple punishments in one trial is entirely a question of legislative intent." 6 S.W.3d at 558. *See also, e.g., Villanueva v. State,* 227 S.W.3d 744, 747 (Tex.Crim.App. 2007) ("The ultimate inquiry is simply whether the Legislature intended that the defendant suffer more than one punishment.").

**13.** *Hawkins,* 6 S.W.3d at 560.

**14.** *See Gonzales,* 304 S.W.3d at 848 (quoting *Huffman v. State,* 267 S.W.3d 902, 905 (Tex. Crim.App.2008), for the proposition that "double-jeopardy and jury-unanimity issues

constitute 'closely intertwined strands of our jurisprudence' ").

**15.** *Landrian,* 268 S.W.3d at 540.

**16.** *See Ex parte Denton,* 399 S.W.3d 540, 546 (Tex.Crim.App.2013) (quoting *Landrian,* 268 S.W.3d at 537, in a double jeopardy case for the proposition that, besides the number of victims, "[w]e have also held that '[t]he gravamen of the offense of aggravated assault is the specific type of assault defined in [Tex. Penal Code] Section 22.01 [Assault]' ").

**17.** *Hawkins,* 6 S.W.3d at 560.

imminent bodily injury or death.[18] Aggravated robbery is the commission of such an offense in addition to certain aggravating elements such as the fact that the bodily injury under Section 29.02(a)(1) was *serious* or that the perpetrator used or exhibited a deadly weapon.[19] The gravamen of simple robbery is clearly more than acquisitive conduct/acquisitive intent alone—that is, more than theft or attempted theft.[20] There is also an assaultive component. The question presented is how to define the gravamen of the simple robbery statute, and hence identify the legislative intent with respect to allowable units of prosecution for *that* offense, taking due account of each of these indispensable components.

One aid in identifying the gravamen of an offense for jeopardy purposes, we have confirmed, is the grammatical structure of the penal provision.[21] Grammatically, Subsections (a)(1) and (a)(2) of Section 29.02 are elemental in the sense that they alternatively describe the assaultive component of the offense of robbery; they alternatively supply the "main verb" that principally defines the offense ("causes"/"threatens" or "places in fear") and, in the case of Subsection (a)(1), the direct object ("bodily injury").[22] Neither

subsection takes the form of an adverbial phrase, which "[g]enerally" serves to describe mere manner and means of committing an offense.[23] Instead, grammatically, although they are alternatively defined, they are nevertheless essential to the offense.

We have also observed that the gravamen of an offense may be identified by the element of that offense that requires a completed act.[24] As presently written, the robbery statute does not require a completed theft.[25] By contrast, the assaultive component must be completed, albeit in either one of two ways. That they are alternative ways, however, hardly means they constitute mere manner and means.[26] As presently written they are, if anything, more essential to the offense of robbery than the comparatively inchoate element of acquisitive conduct/intent. These considerations convince me that Subsections (a)(1) and (a)(2) of Section 29.02 constitute at least a part of the gravamen of simple robbery and do not merely designate alternative manner and means.

By contrast, I might agree that Subsections (a)(1) and (a)(2) of Section 29.02 constitute mere manner and means of committing the assaultive component of robbery

---

18. TEX. PENAL CODE § 29.02(a).

19. TEX. PENAL CODE § 29.03(a).

20. It is not necessary to establish a completed theft to obtain a conviction for robbery. *Hawkins*, 6 S.W.3d at 559–60.

21. *Harris*, 359 S.W.3d at 630.

22. *Jones*, 323 S.W.3d at 890–91.

23. *Id.* at 891.

24. *Loving*, 401 S.W.3d at 647.

25. *Hawkins*, 6 S.W.3d at 559–60; *Jones*, 323 S.W.3d at 890.

26. Indeed, apart from the added acquisitive conduct/intent element, the robbery statute is practically indistinguishable from the simple assault statute. In *Landrian*, we construed the simple assault statute to entail two separate offenses corresponding to the statutory alternatives of bodily injury and threat:

> [A]ggravated assault under each distinct assaultive crime [as defined by the simple assault statute, TEX. PENAL CODE § 22.01(a)] is a separate crime: aggravated assault with the underlying crime of assault by causing bodily injury and aggravated assault with the underlying crime of assault by threat. The first is a result-oriented offense and the second is a conduct-oriented offense.

268 S.W.3d at 540 (citations omitted).

had the Legislature written the statute to read, not as it presently does, but rather, as follows:

> (a) A person commits an offense if, in the course of committing theft … and with intent to obtain and maintain control of the property, he intentionally or knowingly engages in assaultive conduct:
>
>> (1) by causing bodily injury to another; or
>>
>> (2) by threatening or placing another in fear of imminent bodily injury or death.

The main verb of this hypothetical statute is the non-specific "engages," while the direct object is "assaultive conduct." The act that must be completed is generalized "assaultive conduct," while the specific types of assaultive conduct are introduced only by way of adverbial phrases beginning with the preposition "by." Had the Legislature drafted the statute in this way, it would have signaled to us that the gravamen of the offense of robbery was undifferentiated assaultive conduct committed with an acquisitive intent and, more germanely, that the particular type of assaultive conduct was not meant to be elemental—that proof of either statutory manner and means of committing the assault would serve to establish what would effectively constitute the single element of "engages in assaultive conduct." An accused under this statute could be punished no more than once for a particular act, but the jury would not have to be unanimous with respect to the particular statutory manner and means by which that act accomplished the assaultive component of robbery. However, this is not the way the Legislature chose to draft the robbery statute.

I would affirm the judgment of the court of appeals.