

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00067-CR

CORDRECUS DUNQUE BURTON          APPELLANT

V.

THE STATE OF TEXAS          STATE

----------

## FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
## TRIAL COURT NO. 1403862D

----------

## OPINION

----------

In two issues, Appellant Condrecus Dunque Burton appeals his conviction for aggravated robbery with a deadly weapon. *See* Tex. Penal Code Ann. § 29.03(a)(2) (West 2011). We affirm.

## Background

On February 18, 2015, Brittany Darby, an Arlington resident, drove to a car wash in Arlington to clean out her car. According to Darby, she went there alone.

When she arrived, she put her purse in the trunk of the car and then walked around to the back passenger seat and began picking up items from the floor of her car. According to Darby, she suddenly felt someone slap her on her rear end. She testified that when she turned around, she was looking down the barrel of a pistol and thought she was going to die. At trial, Darby identified the man holding the pistol as Appellant.

Darby testified that Appellant demanded she get into her car, so she did, and he got into the car with her and continued to point the pistol at her. She described Appellant as "continu[ing] to ask [her] where it's at" and she replied that she did not have anything, but he was adamant and dug through her glove compartment, the middle console, and the rest of the car. Darby testified that she did not know what Appellant was talking about or looking for. At one point, Appellant told Darby, "B***h, I'll blow your brains out." Appellant continued to rifle through the car and eventually accused Darby of hiding whatever he was looking for on her person and felt under her jacket. Darby testified that Appellant said, "B***h, move your hands," when she placed them in her lap, to which she responded that he was making a big mistake.[1]

At that point, Appellant got out of the car and moved toward the trunk of the car. When Darby followed him, Appellant told her, "B***h, get back in the car." Darby refused to get back in the car, and when Appellant grabbed her

---

[1]At some point while they were in the car, Appellant took a cell phone belonging to Darby.

purse from the trunk, she told him he was not going to take it and reached for her bag to take it back. Appellant then struck her in her face. Darby testified that she fought back and grabbed the collar of his shirt, but Appellant pushed her hard enough that she fell down and hit the back of her head. Appellant "took off running" and Darby got up and ran after him, yelling and screaming for help. Appellant ran into an apartment complex across the street and she followed him. Other people in the apartment complex attempted to help Darby catch Appellant, and at some point, he ran back to Darby, gave her the purse back, and said, "B***h, take your s**t. It's not that serious."

Three women who worked at a dentist's office located across the street from the car wash were returning from lunch when they heard somebody screaming for help and saw a woman and a man, later identified as Appellant, struggling at the carwash. Two of the women, Julie Zamora and Vanessa Perez, testified at trial. Zamora testified that she saw Appellant hit the woman in the face, grab her purse, and run across the street toward the apartment complex. Zamora ran after Appellant and caught up to him as he reached the entrance to the apartment complex, which was next door to the dentist's office. Appellant ran past her, although Zamora noted that he was not running very fast. Perez testified that Darby was crying hysterically and screaming for help.

Nicholas Lewis lived in the apartment complex and was outside on February 18 when he heard screaming and saw a man he identified as Appellant carrying a purse run through a gate in the fence around the complex. Lewis

3

testified that Appellant tried to hide between some of the cars in the complex parking lot and that, when Lewis approached him, Appellant pulled a gun out of the pocket of his hooded sweatshirt, pointed it at Lewis, and said, "Back up, m*****f****r!" Lewis raised his hands and backed away, thinking that he was about to be shot. Appellant walked away, and the police arrived soon after his interaction with Lewis.

Appellant's mother, Tonya, and girlfriend, Makayla Garland, testified in his defense. His mother testified that she had given Appellant $1,202 on the morning of February 18. Garland testified that she picked him up at his mother's house that morning and dropped him off near the carwash. She circled the block, and when she approached the carwash, she saw Appellant speaking to another man by the fence of the carwash. She also recalled seeing a gray car at the carwash. She did not stop at the carwash but continued driving, looking for a place to get gas. When she came back to the carwash about five minutes later, she saw that Appellant was fighting with someone. Garland drove around the corner and called Appellant's mother before returning to the carwash. When she returned to the carwash, Appellant was no longer there, but several other people were there. Appellant's mother arrived and she and Garland looked for Appellant for approximately 15 minutes, but Garland testified that they left as soon as they saw the police.

Avery Harris testified that he walked past the car wash on February 18 and saw two men fighting, Appellant and a man Harris knew as "J Rock." Harris also

4

testified that he saw a woman standing by a black car with its trunk open. During the fight, Harris saw that a gun fell on the ground and Appellant picked it up. Harris testified that J Rock left in his car and then Appellant ran across the street while the woman was screaming, "Stop him, stop him!" Harris did not intervene, but instead went to the nearby convenience store. When he emerged from the store a few minutes later, the police had arrived.

Appellant testified in his own defense that after he picked up the $1,202 from his mother, Garland took him to the car wash to purchase marijuana from J Rock, a drug dealer. Appellant testified that J Rock was smoking marijuana with Darby and that when he arrived, J Rock was walking away from Darby's car, and Darby was standing outside the car with the door open. J Rock's car was also parked in the carwash area. According to Appellant, he asked J Rock for two ounces of marijuana and pulled out the $1,202 in front of J Rock. Appellant testified, "[J Rock's] eyes like got big when he saw the substantial amount of money that I had." Appellant testified that he gave J Rock $100 and that J Rock went to the trunk of Darby's car, purportedly to retrieve the marijuana for Appellant, but instead J Rock grabbed a gun from the trunk, pointed it at Appellant, and told Appellant to give him the rest of Appellant's money. When Appellant hesitated, J Rock put his hand in Appellant's pocket. Appellant grabbed J Rock's hand, and J Rock pulled out a gun and pointed it at him, at which point Appellant "froze up and stopped and [J Rock] just pulled the money out."

5

Appellant alleged that J Rock took all of the $1,202 and then turned to walk back to Darby's car, so Appellant tried to grab the gun from J Rock. The two began to wrestle over the gun. Appellant described Darby as "standing looking like she was shocked" while he was fighting with J Rock over the gun.

Appellant estimated that he and J Rock fought over the gun for about 45 seconds before it fell on the ground, and J Rock kicked the gun towards Darby and told Darby to get it. Appellant testified that Darby hesitated, enabling him to reach the gun before she did, and he picked it up. Darby screamed, and J Rock ran to his car and drove away. Appellant then went to the trunk of Darby's car to look for his money and grabbed a purse that was in the trunk. After that, Appellant ran across the street, thinking he was running toward J Rock's car, and Darby was screaming that Appellant had a gun and to stop him. Appellant testified that he ran into the apartment complex and that J Rock also drove into the apartment complex through a different entrance. Appellant admitted that Lewis had seen him hiding behind a car, where Appellant claimed he was hiding from J Rock.

Appellant denied slapping Darby's rear end or hitting her in the face at any point during the incident.

Passion Walker testified that she purchased drugs from J Rock at his house on the morning of February 18 and that she later saw Appellant and J Rock arguing next to J Rock's car, a gray Oldsmobile which according to her was parked at the corner store near the car wash. Walker testified that J Rock ran to

6

a black car at the car wash, threw something to a woman standing at the open trunk of the black car, and ran in the opposite direction, toward the apartments across the street from the car wash. Walker testified that Appellant ran "a whole totally different direction" and that she did not hear anyone screaming.

Appellant was charged by a one-count, two-paragraph indictment with aggravated robbery. The jury found Appellant guilty of aggravated robbery with a deadly weapon, and the trial court sentenced him to 30 years' confinement.

## Discussion

Appellant brings two issues on appeal. In his first issue, Appellant argues that his constitutional right to a unanimous verdict was violated because the trial court failed to instruct the jury that it must unanimously agree on which paragraph of the indictment it found him guilty. In his second issue, Appellant challenges the sufficiency of the evidence to support his conviction.

## I. Unanimity of the verdict

Appellant argues that his right to a unanimous verdict was violated when the trial court submitted the charge on aggravated robbery with a deadly weapon in the disjunctive. Appellant does not dispute that he did not object to the jury charge at trial, but "all alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.*

7

A jury must reach a unanimous verdict. *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008); *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005). However, while the jury must agree that the defendant committed one specific crime, this does not mean that the jury must unanimously find that the defendant committed that crime in one specific way or even with one specific act. *Landrian*, 268 S.W.3d at 535.

Aggravated robbery incorporates the elements of the lesser offense of robbery. Tex. Penal Code Ann. § 29.03(a). A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Id.* § 29.02(a) (West 2011). As charged in the case at bar, the offense is elevated to aggravated robbery if the offender uses or exhibits a deadly weapon. *Id.* § 29.03(a)(2).

Appellant was charged by a one-count, two-paragraph indictment with aggravated robbery. Paragraph one alleged that he caused bodily injury to the complainant, and paragraph two alleged that he threatened or placed her in fear of imminent bodily injury or death. Both paragraphs alleged that Appellant used or exhibited a deadly weapon. The jury charge instructed the jury in the disjunctive, advising that if the jury found from the evidence beyond a reasonable doubt that Appellant caused bodily injury to the complainant *or* threatened or placed her in fear of imminent bodily injury or death, then it was to find Appellant

8

guilty of aggravated robbery.[2]  The jury charge also included general unanimity instructions.  The jury found Appellant guilty of aggravated robbery with a deadly weapon as charged in the indictment.

"A trial court may submit a disjunctive jury charge and obtain a general verdict where the alternate theories involve the commission of the 'same offense.'"  *Rangel v. State*, 199 S.W.3d 523, 540 (Tex. App.—Fort Worth 2006, pet. dism'd) (quoting *Finster v. State*, 152 S.W.3d 215, 218 (Tex. App.—Dallas 2004, no pet.)); *see also Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (holding it was proper for jury to be charged in disjunctive as to different methods of committing capital murder).  In *Cooper v. State*, 430 S.W.3d

---

[2]The jury charge read as follows:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 18th day of February, 2015, in Tarrant County, Texas, [Appellant], did then and there intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, cause bodily injury to another, Brittany Darby, by striking her with his fist, or by pushing her to the ground and the defendant used or exhibited a deadly weapon, to-wit: a firearm, then you will find [him] guilty of aggravated robbery with a deadly weapon as charged in count one, paragraph one of the indictment; or,

> If you find from the evidence beyond a reasonable doubt that on or about the 18th day of February, 2015, in Tarrant County, Texas, [Appellant], did then and there intentionally or knowingly, while in the course of committing theft of property and with intent to obtain or maintain control of said property, threaten or place Brittany Darby in fear of imminent bodily injury or death, and [he] used or exhibited a deadly weapon, to-wit: a firearm, then you will find [him] guilty of aggravated robbery with a deadly weapon as charged in count one, paragraph two of the indictment.

426 (Tex. Crim. App. 2014), the court of criminal appeals held that separate convictions for aggravated robbery based on the two underlying methods of robbery—causing bodily injury to or threatening the same victim during a home invasion—violated double jeopardy. *Id.* at 427. The two concurring opinions issued by the court agreed that aggravated robbery causing bodily injury and aggravated robbery by threat are alternative methods of committing the offense of aggravated robbery. *Id.* at 434 (Keller, P.J., concurring), 439 (Cochran, J., concurring).[3] We are bound by the court of criminal appeals' holding in *Cooper*. *Crenshaw v. State*, 424 S.W.3d 753, 755 (Tex. App.—Fort Worth 2014, no pet.).[4] Reading *Rangel* and *Cooper* together leads us to conclude that it was not error

[3]The *Cooper* opinion is a fractured opinion by the court of criminal appeals. The majority of five justices issued a brief, three-paragraph opinion holding that appellant's separate convictions for aggravated robbery based on theories of causing bodily injury and threat to the same victim during the same home invasion violated double jeopardy. 430 S.W.3d at 427. Two concurring opinions were issued, each joined by one justice. *Id.* at 427–35 (Keller, P.J., concurring), 435–39 (Cochran, J. concurring).

[4]We note that our prior decision in *Barrow v. State*, No. 02-13-00187-CR, 2015 WL 4380866, at *4 (Tex. App.—Fort Worth July 16, 2015, no pet.) (mem. op., not designated for publication), relied upon by Appellant, determined that the submission of aggravated robbery in the disjunctive as to the aggravating factors—in that case, whether the appellant committed aggravated robbery by causing bodily injury to a person 65 years or older or by exhibiting a deadly weapon—was error because it violated the requirement of jury unanimity. *But see Woodard v. State*, 294 S.W.3d 605, 609 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (holding that the aggravating factors of aggravated robbery are "simply descriptions or means by which the underlying offense of robbery causing bodily injury can be committed"). Here, we address a different issue, i.e., whether it was proper to charge the underlying methods of robbery in the disjunctive. However, to the extent that our opinion in *Barrow* conflicts with the court of criminal appeals' holding in *Cooper*, we note that *Cooper* controls.

for the charge of aggravated robbery to be submitted in the disjunctive because causing bodily injury or threatening the victim are different methods of committing the same offense. We overrule Appellant's first issue.

## II. Sufficiency of the evidence

Appellant's second issue attacks the sufficiency of the evidence to support his conviction.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49.

To determine whether the State has met its burden under *Jackson* to prove a defendant's guilt beyond a reasonable doubt, we compare the elements of the crime as defined by the hypothetically correct jury charge to the evidence adduced at trial. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014); *see Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Thomas*, 444 S.W.3d at 8. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the factual details and legal theories contained in the charging instrument. *See id.*; *see also Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

A person commits aggravated robbery if he uses or exhibits a deadly weapon "in the course of committing theft and with intent to obtain or maintain control of the property" and "he intentionally or knowingly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *See* Tex. Penal Code Ann. § 29.03(a)(2).

12

Appellant argues in particular that, because he returned the purse and cell phone to Darby, the State did not meet its burden to show that he intended to deprive the owner of the property. However, the actual commission of the offense of theft is not a prerequisite to the commission of the offense of robbery; the gravamen of robbery is the assaultive conduct and not the theft. *Ex parte Denton*, 399 S.W.3d 540, 546 (Tex. Crim. App. 2013). A completed theft is therefore not required to establish a robbery. Tex. Penal Code Ann. § 29.02(a) (requiring assaultive conduct "in the course of committing theft"); *Robinson v. State*, 596 S.W.2d 130, 134 (Tex. Crim. App. 1980) (observing that prior version of the penal code required a completed theft to prove aggravated robbery). The testimony that Appellant took the purse and cell phone from Darby while threatening her at gunpoint and then ran away from her is sufficient to establish an intent to commit theft, regardless of whether he later returned the purse and cell phone. *See Caldwell v. State*, 943 S.W.2d 551, 552 (Tex. App.—Waco 1997, no pet.) (holding evidence that appellant demanded money from bank teller at knifepoint and ran from bank with a bag matching description of bag in which teller stated she placed the money was sufficient to show intent to obtain and control property); *Shaw v. State*, 826 S.W.2d 763, 767 (Tex. App.—Fort Worth 1992, pet. ref'd) (holding evidence that appellant took victim's purse at gunpoint and threw it outside the car to his accomplice was sufficient to show control over money in the purse).

The jury was essentially presented with two narratives of what took place on February 18, 2015, and Appellant argues that the jury should have believed his story.  However, it was the jury's role to determine the credibility of all of the witnesses, including Appellant, and to resolve conflicts between the witnesses' testimony.  *Dobbs*, 434 S.W.3d at 170.  The jury was presented with evidence that Appellant punched Darby in the face, pushed her to the ground, and threatened her with a firearm before running away with her purse, and this account was corroborated by other nearby witnesses.  This evidence was sufficient to prove aggravated robbery. *See, e.g., Shaw*, 826 S.W.2d at 767; *Caldwell*, 943 S.W.2d at 552–53.

We therefore overrule Appellant's second issue.

## Conclusion

Having overruled each of Appellant's issues, we affirm the judgment of the trial court.

/s/ Bonnie Sudderth
BONNIE SUDDERTH
JUSTICE

PANEL:  LIVINGSTON, C.J.; GABRIEL and SUDDERTH, JJ.

PUBLISH

DELIVERED:  January 5, 2017

14