**Opinion issued March 25, 2025**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-23-00330-CR**

_____

**CHRISTOPHER WAYNE WALKER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 17535130**

---

**MEMORANDUM OPINION**

A jury found appellant, Christopher Wayne Walker, guilty of the felony offense of robbery.[1]  After appellant pleaded true to the allegations in two enhancement paragraphs that he had twice been previously convicted of felony

---
[1]  *See* TEX. PENAL CODE ANN. § 29.02.

offenses, the jury assessed his punishment at confinement for thirty years. In two issues, appellant contends that the evidence is legally insufficient to support his conviction.

We affirm.

## Background

A Harris County Grand Jury issued a true bill of indictment, alleging that appellant, on or about December 25, 2021, "did then and there unlawfully, while in the course of committing theft of property owned by Edwin Yohan Orellana Montoya," the complainant, "and with intent to obtain and maintain control of the property, intentionally and knowingly threaten[ed] and place[d] Edwin Montoya in fear of imminent bodily injury and death, and [appellant] did then and there use and exhibit a deadly weapon, namely, a firearm."[2]

The complainant testified that his name was Edyin Orellana-Montolloya. On December 25, 2021, he was driving a black Tundra truck to 8405 Broadway Street, Harris County, Texas. His son was in the truck with him. When the complainant arrived at his destination, he realized that he was at the wrong apartment building. He then put his truck in reverse but did not see the car behind

---

[2] *See id.* § 29.03 (aggravated robbery). Although appellant stood accused by indictment of the felony offense of aggravated robbery, the jury found him guilty of the lesser-included offense of robbery. *See Teague v. State*, 789 S.W.2d 380, 382 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd).

him. He backed his truck into the car and "just push[ed] it." There was no damage to the car.

After the collision, the complainant saw appellant, the driver of the car, get out, so the complainant got out of his truck as well. The complainant wanted to talk to appellant about "get[ting] things fixed." The complainant apologized to appellant because he "didn't see him," and he attempted to exchange information with appellant. Appellant had a firearm in his hand. Appellant told the complainant that he "had to pay him his money, otherwise that would bring consequences," like shooting the complainant. Appellant pointed the firearm at the complainant and said, "I need my money, I want my money, you have to pay me." If the complainant did not pay appellant, then appellant "would shoot [him]."

Appellant told the complainant that he wanted $400 or $500. The complainant then got $200 out of his truck and gave it to appellant. The complainant asked appellant "to give [him] 15 more days in order to pay the rest." The complainant felt threatened, especially because his son was with him. The complainant testified that he did not consent to giving appellant $200; he paid appellant $200 "because he had his gun, and he told [the complainant] that he wanted his money." The complainant was afraid for his life. The complainant gave appellant the $200 even though he did not think that appellant's car was damaged.

The complainant reluctantly gave appellant his information, including his address, because he was afraid. Appellant took a photograph of the complainant's face. The complainant also took photographs once appellant went back to his car. Appellant never fired his firearm, but he did point it at the complainant.

The complainant did not call for emergency assistance while at the collision scene. Instead, he left the scene because he did not want to "stay close to a person that took out a gun." The complainant drove home. Two days later, the complainant received a telephone call from appellant and appellant's alleged attorney. Appellant told the complainant, "I want my money" and "[G]ive me my money." The complainant decided to file a report with law enforcement because he was afraid for his family.

The complainant met with Houston Police Department ("HPD") Officer O. Hernandez and gave him a statement. The complainant gave Hernandez his information and information about appellant's car. The complainant also gave Hernandez the photographs that he had taken on the day of the car collision. One photograph showed appellant holding a firearm sitting in his car, and another photograph showed appellant's insurance information. The complainant received a ticket from Hernandez because he "admitted to [causing] the [car] accident that happened on that day."

On December 30, 2021, the complainant identified appellant in a photographic lineup. The complainant did not get his $200 back.

Officer Hernandez testified that on December 26, 2021, he was assigned to the front desk at the southeast HPD station. Hernandez was on duty when the complainant came into the station. The complainant gave Hernandez a statement and showed him photographs of the car collision, including photographs of "a potential suspect inside a blue Cobalt Chevy [car]" and text messages from an alleged attorney representing the suspect. Hernandez was able to determine that the suspect's name was Chris Walker. Hernandez also issued the complainant a citation for not having a driver's license and for "backing out without safety."

HPD Officer A. Barnett testified that she was part of the Crime Suppression Unit and was assigned to the complainant's case. While investigating an unrelated incident, on January 10, 2022, Barnett saw appellant walking across the street at 8300 Broadway Street, and she arrested him. According to Barnett, she arrested appellant right across the street from where the car collision had occurred. The complainant later identified appellant in a photographic lineup.

Officer Barnett also testified that a firearm was a deadly weapon, and it was capable of causing serious bodily injury or death.

5

## Standard of Review

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the jury's verdict to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We defer to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from the facts. *Williams*, 235 S.W.3d at 750. That said, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

We note that in reviewing the sufficiency of the evidence, a court must consider both direct and circumstantial evidence and any reasonable inferences that may be drawn from the evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *see also Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012) (evidence-sufficiency standard of review same for both direct and circumstantial evidence). Circumstantial evidence is just as probative as direct

evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). For evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with a defendant's guilt. *See Wise*, 364 S.W.3d at 903; *Cantu v. State*, 395 S.W.3d 202, 207–08 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based on the cumulative force of all the evidence when considered in the light most favorable to the jury's verdict. *See Wise*, 364 S.W.3d at 903; *Hooper*, 214 S.W.3d at 13. The jury, as the judge of the facts and credibility of the witnesses, could choose to believe or not to believe the witnesses, or any portion of their testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jenkins v. State*, 870 S.W.2d 626, 628 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd).

### In Course of Committing Theft

In his first issue, appellant argues that the evidence is legally insufficient to support his conviction because the evidence did not establish that he was "in the course of committing theft of property from the complainant."

A person commits the offense of robbery if, "in the course of committing theft," "and with intent to obtain or maintain control of the property," he "intentionally or knowingly threatens or places another in fear of imminent bodily

injury or death." TEX. PENAL CODE ANN. § 29.02(a)(2). A person "commit[s] theft" if he "unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a). "Appropriation of property is unlawful if . . . it is without the owner's effective consent." *Id.* § 31.03(b)(1). "'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." *Id.* § 29.01(1). The requisite specific intent to commit theft can be inferred from a defendant's conduct and remarks and from all surrounding circumstances. *See Sanchez v. State*, 428 S.W.3d 240, 245 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

The complainant testified that after he mistakenly backed his truck into appellant's car, he got out of the truck to talk to appellant about "get[ting] things fix[ed]." The complainant, who had never seen appellant before, apologized to appellant because he "didn't see him." Appellant got out of his car with a firearm in his hand and told the complainant that he "had to pay him money" otherwise there would be "consequences," like shooting the complainant. Appellant pointed his firearm at the complainant and said, "I need my money, I want my money, you have to pay me." According to the complainant, if he did not pay appellant, then appellant "would shoot [him]."

Appellant, while holding the firearm, told the complainant that he wanted $400 or $500. The complainant then got $200 out of his truck and gave it to appellant. The complainant felt threatened, especially because his son was with him. The complainant testified that he did not consent to giving appellant $200; he paid appellant $200 "because he had his gun, and he told [the complainant] that he wanted his money." The complainant was afraid for his life, and he gave appellant the $200 even though he did not think that appellant's car was damaged. Appellant left the scene of the car collision with the complainant's money. The complainant later identified appellant as the person who had pointed a firearm at him and taken his $200. The complainant did not get his $200 back.

Here, the evidence showed that appellant pointed a firearm at the complainant and demanded that the complainant pay him money. The complainant gave appellant $200, and appellant took and left the scene of the car collision with it. The complainant did not consent to giving appellant the money. The testimony of the complainant is sufficient to establish the "in the course of committing theft" element of the offense of robbery. *See, e.g.*, *Burton v. State*, 510 S.W.3d 232, 238–39 (Tex. App.—Fort Worth 2017, no pet.) ("The testimony that [defendant] took the purse and cell phone from [the complainant] while threatening her at gunpoint . . . [was] sufficient to establish an intent to commit theft . . . ."); *Hensley v. State*, No. 01-14-00615-CR, 2015 WL 6081798, at *3–4 (Tex. App.—Houston

9

[1st Dist.] Oct. 15, 2015, no pet.) (mem. op., not designated for publication) (holding evidence legally sufficient to support conviction for aggravated robbery where complainants testified that defendant "robbed them at gunpoint and took their personal items and . . . vehicle without their consent"). Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant was acting "in the course of committing theft." Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction.

We overrule appellant's first issue.

## Variance

In his second issue, appellant argues that the evidence is legally insufficient to support his conviction because a "fatal variance" existed "between the State's proof of the complainant's name [offered] at trial and the name alleged in the indictment."

A "variance" occurs when there is a discrepancy between the allegations made in a charging instrument and the proof presented at trial. *Gollihar v. State*, 46 S.W.3d 243, 246 (Tex. Crim. App. 2001). Variances can be either material or immaterial. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). In determining whether the evidence is legally insufficient to support a defendant's

10

conviction, only a material variance requires reversal because only a material variance prejudices a defendant's substantial rights. *Gollihar*, 46 S.W.3d at 257.

A variance is material if the indictment did not inform the defendant of the charge against him sufficiently to allow him to prepare an adequate defense or if the variance subjects the defendant to the risk of later being prosecuted for the same offense. *Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002); *Gollihar*, 46 S.W.3d at 257. An immaterial variance will be disregarded. *Gollihar*, 46 S.W.3d at 258; *see also Byrd*, 336 S.W.3d at 247–48 (immaterial variances between allegations and proof are "little mistakes, generally not likely to prejudice a defendant's substantial rights").

Appellant complains that the indictment listed the complainant's name as "Edwin Yohan Orellana Montoya" and "Edwin Montoya," but the complainant testified at trial that his name was Edyin Orellana-Montolloya. Although appellant asserts that the variance is "fatal," he does not argue that he was not sufficiently informed of the charge against him, that he was unable to prepare an adequate defense, or that the complained-of variance subjects him to the risk of later being prosecuted for the same offense.

Notably, appellant was convicted of the offense of robbery. A person commits the offense of robbery if, "in the course of committing theft," "and with intent to obtain or maintain control of the property," he "intentionally or knowingly

11

threatens or places another in fear of imminent bodily injury or death."  TEX. PENAL CODE ANN. § 29.02(a)(2).  A person commits theft if he "unlawfully appropriates property with intent to deprive the owner of property."  *Id.* § 31.03(a). "'Owner' means a person who . . . has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor."  *Id.* § 1.07(a)(35).

The complainant's name is not a statutory element of the offense of robbery or theft.  *See Byrd*, 336 S.W.3d at 252 (name of owner "is not a substantive element of theft"); *Fuller*, 73 S.W.3d at 253–54; *Steele v. State*, 490 S.W.3d 117, 124 (Tex. App.—Houston [1st Dist.] 2016, no pet.).  Thus, the State's "failure to prove the [complainant's] name exactly as alleged in the indictment does not . . . make the evidence insufficient to support [a defendant's] conviction." *Fuller*, 73 S.W.3d at 253; *see also Steele*, 490 S.W.3d at 124.  Instead, with regard to the identity of the complainant, "the State must [simply] prove that the [complainant] alleged in the indictment is the same person as the [complainant] proved at trial."  *Johnson v. State*, 364 S.W.3d 292, 295 (Tex. Crim. App. 2012); *see also Lowrey v. State*, 469 S.W.3d 318, 329 (Tex. App.—Texarkana 2015, pet. ref'd) ("It is the identity of the person (or entity), not the formal name, that guides and controls the sufficiency of the evidence on review.").

The indictment alleged that appellant, on or about December 25, 2021, "did then and there unlawfully, while in the course of committing theft of property owned by Edwin Yohan Orellana Montoya," the complainant, "and with intent to obtain and maintain control of the property, intentionally and knowingly threaten[ed] and place[d] Edwin Montoya in fear of imminent bodily injury and death, and [appellant] did then and there use and exhibit a deadly weapon, namely, a firearm."[3] At trial, the State announced that it was calling "Edwin Yban Orellana Montolloya" to testify as its first witness. When the complainant was asked to introduce himself to the jury, he stated, "I am Edwin Orellana." The complainant was then asked whether he had a "hyphenated last name of Montolloya," and the complainant responded, "Yes, Montolloya, Orellana-Montolloya." The complainant was asked to spell his name, to which he replied, "E-D-Y-I-N, O-R-E-L-L-A-N-A . . . M-O-N-T-O-L-L-O-Y-A."

As to the offense itself, the complainant testified that he got into a car collision with appellant. After the complainant exited his truck to speak to appellant, appellant pointed a firearm at him and demanded that the complainant pay him money. The complainant gave appellant $200, which appellant took and left the scene of the car collision with. The complainant did not consent to giving

---

[3] As noted previously, appellant stood accused by indictment of the felony offense of aggravated robbery, but the jury found him guilty of the lesser-included offense of robbery. *See Teague*, 789 S.W.2d at 382.

appellant the money. He paid appellant $200 "because he had his gun, and he told [the complainant] that he wanted his money."

The record contains no indication that appellant "did not know whom he was accused of injuring or that he was surprised by the proof at trial" and unable to prepare an adequate defense, and the complained-of variance "does not subject appellant to another prosecution for the same offense." *See Fuller*, 73 S.W.3d at 253–54; *see also Steele*, 490 S.W.3d at 125–26. Thus, we conclude that the complained-of variance between the indictment and the proof at trial in this case is immaterial. *See Steele*, 490 S.W.3d at 126.

Viewing the evidence in the light most favorable to the jury's verdict, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that the complainant who testified at trial was the complainant "Edwin Yohan Orellana Montoya" and "Edwin Montoya" as alleged in the indictment. *See Steele*, 490 S.W.3d at 126; *see also Johnson*, 364 S.W.3d at 295 ("[T]he [complainant's] name need not be proved with exactness, but the State must prove that the [complainant] alleged in the indictment is the same person as the [complainant] proved at trial."). Accordingly, we hold that the evidence was legally sufficient to support appellant's conviction.

We overrule appellant's second issue.

14

**Conclusion**

We affirm the judgment of the trial court.


                                        Kristin Guiney
                                        Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.

Do not publish.  TEX. R. APP. P. 47.2(b).