**Opinion issued January 30, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00072-CR

_____

**FRANCISCO JAVIER SANCHEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1281279**

---

## O P I N I O N

A jury found appellant, Francisco Javier Sanchez, guilty of aggravated robbery with a deadly weapon and assessed his punishment at seventeen years'

confinement.[1]  In his sole issue on appeal, appellant argues that the evidence was legally insufficient because a reasonable doubt exists regarding whether he used force against the complainant while in the course of committing theft.

We affirm.

## Background

Appellant was charged with the offense of aggravated robbery arising out events that transpired on October 12, 2010, when appellant went to the home of the complainant, Wsvaldo Rodriguez, wearing a bandana to conceal his face and carrying a club-like object wrapped in tape, a roll of duct tape, and an unloaded handgun.  Rodriguez's wife, Herlinda Velasquez, was home at the time appellant arrived, and she called 9-1-1.  Rodriguez returned to his home while appellant was in his driveway, and appellant threatened Rodriguez with the handgun, but he was quickly apprehended by officers responding to Velasquez's 9-1-1 call.  Appellant was arrested and gave a custodial statement to the investigating officers.

At trial, the trial court suppressed appellant's custodial statement on the ground that his *Miranda* warnings were not properly translated.[2]

Rodriguez and Velasquez both testified that they knew appellant because Velasquez and appellant's wife were friends but that they had only known

---

[1]    *See* TEX. PENAL CODE ANN. §§ 29.02, 29.03 (Vernon 2013).

[2]    *See Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966).

2

appellant for a month or two prior to the underlying incident. Rodriguez testified that he had previously offered appellant the opportunity to do some landscaping work for him because he knew that appellant needed a job. However, Rodriguez stated that he could not afford to pay the amount appellant quoted as an estimate for completing the work, so he did not have appellant do any work for him after all. He saw appellant socially after he refused to have appellant do the landscaping work, and he thought they had a good relationship. He testified that he invited appellant to a barbecue at his car dealership, but he denied that anything happened between himself and appellant. Rodriguez testified that he had a gun at the dealership for security purposes and that, while appellant was present, Rodriguez showed the gun to the man who watched the car lot at night. He testified that he never pointed the gun at appellant or threatened appellant in any way. Rodriguez testified that he had never exchanged any angry words with appellant or had any type of dispute with him prior to October 12, 2010. Velasquez likewise testified that she had never seen her husband and appellant arguing at any time.

Velasquez testified that, on October 12, 2010, she made breakfast for her two oldest children before Rodriguez left to take them to school. After Rodriguez left, Velasquez went to the back door to lock it. She saw a man "who was coming, walking fast to the door where I was standing." When he reached the door, she "saw his hands holding a black weapon at the height of the doorknob." She also

3

saw that he was carrying a club-like object and a roll of duct tape. Velasquez testified that the man attempted to open the door by pushing on the door handle and on the door itself. She testified that she could not see his face because it was covered. At that point, she ran away to hide and called 9-1-1.

Rodriguez testified that on October 12, 2010, when he returned home from dropping his two oldest children off at school, he observed several police cars parked several houses down the street from where he lived. Rodriguez pulled into his driveway, got out of his car, and walked to the back door. Velasquez warned him that an armed man was in the backyard, and Rodriquez began walking back toward his car. Rodriguez testified that "somebody jump[ed] over from the truck close to the trees," held a gun to his head, and told him to "lay down [on] the floor because I'm gonna kill you." Rodriguez observed that the person was "wearing a mask" and had a stick of some kind in his hand as well. He stated that he was scared and thought he was going to die and that he yelled for his wife to call the police. The police arrived just moments later, and Rodriguez identified appellant as the man who had pulled the gun on him and threatened to kill him.

Lieutenant W. Schultz with the Harris County Precinct Four Constable's Office testified that when he arrived on the scene in response to Velasquez's 9-1-1 call, he and other officers parked several houses away and approached slowly from several directions in order to gain a tactical advantage. When he arrived at

4

Rodriguez's house, he observed "a male with a weapon to the victim." As more officers arrived on the scene, the man with the weapon threw his gun and club-like weapon down, and the officers took him into custody. Lieutenant Schultz identified appellant as the person who was arrested at the scene. Sergeant W. Stensland likewise testified regarding the events leading up to appellant's arrest.

Deputy R. Ruiz testified that he placed appellant in the back of his patrol car and helped collect physical evidence from the scene, including the unloaded gun appellant had used, the roll of duct tape, and the club-like object, which was later identified to be some sort of wrench. Deputy Ruiz testified that, although the handgun was unloaded, it was a real firearm that was in working order and could have been used to fire a bullet.

Appellant testified on his own behalf. He testified that he met Rodriguez and Velasquez approximately three months before the day he was arrested. He further testified that Rodriguez insulted him at the barbecue at the used car lot and "pulled out a R-15," pointed it at him, and said, "look, for whoever wants to get too smart with me." Appellant stated that he got angry and left with his wife.

Appellant testified that, on October 12, 2010, he went to Rodriguez's house wearing a rag to conceal his face and carrying an unloaded handgun, a roll of duct tape, and a wrench wrapped in duct tape. He testified that he "took the gun in case [Rodriguez pulled] out the machine gun, the gun that he had, to scare him." He

further stated that his intent in going to Rodriguez's house was to "break the windows of the trucks . . . because [he] was so angry" over the incident that had occurred at the barbecue and over the fact that Rodriguez had refused to give him the landscaping job. Appellant stated that he did not have the intent to rob Rodriguez and that he "was gonna break the windows." He testified that he brought the duct tape to muffle the sounds of the breaking windows and that he intended to use the wrench wrapped in tape to break the windows.

Appellant testified that he was prevented from breaking any windows by Rodriguez's arrival back home, so appellant decided to confront him. He denied that he attempted to open the door to Rodriguez's home. He also testified that before he arrived at Rodriguez's house on the morning of October 12, he had drunk approximately twelve cans of beer.

On cross examination, the State impeached appellant's account of events using the custodial statement appellant had given that had been suppressed by the trial court for improperly translated *Miranda* warnings. Appellant did not object to this line of questioning or request a limiting instruction. Appellant acknowledged that he told the investigating officers that he needed money to pay rent and that he went to Rodriguez's house to steal money. Appellant also admitted that he told the officers that he brought the tape-wrapped wrench to use as a weapon against Rodriguez in case he fought back. On re-direct examination, appellant testified

6

that he told the investigating officers that he went to Rodriguez's house to rob him because something the detective told him led him to believe that saying he went to commit a robbery would benefit him by resulting in less-severe charges being filed against him.

The jury convicted appellant of aggravated robbery, and it assessed his punishment at seventeen years' confinement.

## Analysis

In his sole issue, appellant argues that the evidence is legally insufficient to support his conviction because a reasonable doubt exists regarding whether he used force against the complainant while in the course of committing theft.

### A. Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Furthermore, direct and circumstantial evidence are treated equally, and

7

circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Id.* Circumstantial evidence alone can be sufficient to establish guilt. *Id.*

The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *see also Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating jury can choose to disbelieve witness even when witness's testimony is uncontradicted). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistences in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton*, 235 S.W.3d at 778 ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

**B.   Aggravated Robbery**

To establish that appellant committed the offense of aggravated robbery, the State was required to prove that appellant "commit[ed] robbery as defined in Section 29.02, and he . . . use[d] or exhibit[ed] a deadly weapon." *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2011).  A person commits robbery "if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of the property," the person "intentionally or knowingly threatens or places another in fear of imminent bodily injury or death."  *Id.* § 29.02(a)(2) (Vernon 2011).  "In the course of committing theft" means "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft."  *Id.* § 29.01(1) (Vernon 2011).  The requisite specific intent to commit theft can be inferred from a defendant's conduct and remarks and from all surrounding circumstances.  *See Robertson v. State*, 871 S.W.2d 701, 705–06 (Tex. Crim. App. 1993).

**C.   Sufficiency of the Evidence**

On appeal, appellant does not contest that he used a deadly weapon to threaten or place another in fear of imminent bodily injury or death.  *See* TEX. PENAL CODE ANN. §§ 29.02, 29.03.  He argues only that a reasonable doubt exists regarding whether he used force against Rodriguez while in the course of

9

committing theft because the evidence is legally insufficient to establish that he intended to commit a theft when he went to Rodriguez's home.

However, Rodriguez testified that he knew appellant needed money. Rodriguez, Velasquez, and appellant all testified that appellant went to Rodriguez's home wearing a bandana to conceal his face and carrying weapons. Velasquez testified that appellant attempted to enter her home. Furthermore, appellant acknowledged that he told police during the subsequent investigation that he went to Rodriguez's home with intent to steal money because he needed money for rent. Based on this evidence, the jury could have reasonably inferred that appellant's intent in going to Rodriguez's home was to commit theft. *See Robertson*, 871 S.W.2d at 705–06.

Appellant argues that evidence of his statements made to police was inadmissible because the trial court suppressed the custodial statement he made to police following his arrest. A statement that was suppressed under *Miranda* may still be admissible for purposes of impeachment. *See Johnson v. State*, 169 S.W.3d 223, 240 (Tex. Crim. App. 2005) (citing *Harris v. New York*, 401 U.S. 222, 225–26, 91 S. Ct. 643, 645–46 (1971)); *see also Manns v. State*, 122 S.W.3d 171, 192 (Tex. Crim. App. 2003) ("[E]vidence obtained in violation of the Fourth Amendment may be used to impeach the defendant's trial testimony."). When evidence is admissible for one purpose such as impeachment, but not all purposes,

a defendant may request a limiting instruction to restrict evidence to its proper scope. *See* TEX. R. EVID. 105(a). The failure to request a limiting instruction at the time the evidence is presented renders the evidence admissible for all purposes and relieves the trial court of the obligation to give the limiting instruction. *Williams v. State*, 273 S.W.3d 200, 230 (Tex. Crim. App. 2008).

Here, appellant failed to request a limiting instruction when the State used his previously-suppressed custodial statement to impeach his testimony regarding his intent in going to Rodriguez's home. Thus, the evidence that he told police that he intended to steal from Rodriguez when he went to his home on October 12, 2010, was rendered admissible for all purposes and is properly considered in a review of the legal sufficiency of the evidence. *See id.*; *see also Clayton*, 235 S.W.3d at 778 (holding that review of "all of the evidence" includes evidence that was properly and improperly admitted).

Appellant further argues that this evidence raised only a "suspicion" of guilt and that the record "conclusively establishes a reasonable doubt because the evidence only supports a speculative conclusion that [appellant] intended to commit theft." The Texas Court of Criminal Appeals has held:

> Under the *Jackson* test, we permit juries to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences and presumptions. . . . [A]n inference is a conclusion reached by considering other facts and deducing a logical

11

consequence from them. Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt.

*Hooper v. State*, 214 S.W.3d 9, 15–16 (Tex. Crim. App. 2007).

We reject appellant's argument that the jury here reached its conclusion based on mere speculation or factually unsupported inferences. The evidence presented at trial established that appellant needed money and that he was angry with Rodriguez for refusing to give him some landscaping work and for other perceived slights. Appellant went to Rodriguez's home armed with a club-like object and an unloaded handgun and attempted to enter the home. Shortly thereafter, Rodriguez returned home and appellant confronted and threatened him. Appellant told police that he needed money for rent and that he intended to steal money from Rodriguez. This evidence supports a reasonable inference that appellant went to Rodriguez's home with the intent to commit theft, and thus his threats against Rodriguez occurred in the course of the attempted theft. *See id.*

We cannot say, given the totality of the evidence presented in this case, that the jury engaged in "mere theorizing or guessing about the possible meaning of facts." *See id.* Juries are entitled to rely on circumstantial as well as direct evidence. *Clayton*, 235 S.W.3d at 778. Likewise, they are entitled to make reasonable inferences supported by the evidence presented at trial. *See Hooper*,

12

214 S.W.3d at 15–16. Moreover, the jury was the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to their testimony, and it was entitled to accept one version of the facts and reject another or reject any part of a witness's testimony. *See Bartlett*, 270 S.W.3d at 150; *Sharp*, 707 S.W.2d at 614. Thus, the fact that some of the evidence is contradicted—as here, where appellant contradicted the statement he made to police by testifying at trial that he went to Rodriguez's home with the intent to smash the windows of Rodriguez's trucks and that he only told investigators that he intended to steal because the police told him that it would be better for him—does not alter this conclusion.

We overrule appellant's sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Massengale.

Publish. TEX. R. APP. P. 47.2(b).