# NO. 12-24-00116-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOSEPH DAN FULLER,*<br>*APPELLANT* | § | *APPEAL FROM THE 413TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *JOHNSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Appellant, Joseph Dan Fuller, appeals his conviction for robbery. In two issues, he challenges the sufficiency of the evidence and the trial court's admission of certain impeachment evidence.[1] We affirm.

### BACKGROUND

On the night of December 18, 2022, Hayden Miller (then sixteen years old) worked the closing shift at a Brookshire's grocery store located in Joshua, Texas. At approximately 9:00 p.m., Miller assumed the cashier position at the store's only open cash register located near the entrance. While there, Miller noticed an individual (whom he later identified as Appellant) enter the store and walk towards the back of the building. A few minutes later, Miller observed Appellant walking around the wine section and behaving in a furtive manner; he carried no items for purchase and stared at Miller while he rang up a customer's purchase. The customer paid for her items in cash, and while the cash drawer was open, Appellant approached Miller from behind, pushed him aside, and attempted to grab the money inside the drawer. In the ensuing struggle, Miller tried to physically prevent Appellant from taking the cash, while Appellant

---

[1] This case was transferred to this Court from the Tenth Court of Appeals in Waco, Texas, pursuant to a docket equalization order. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

pushed Miller to the ground and, after Miller got up, "hit [him] in the face," causing Miller to fall again. Appellant picked up the cash from the ground and fled.

Officers from the Joshua Police Department responded to the scene, took statements from witnesses, and obtained surveillance footage from the store's security cameras. The officers extracted still photographs of Appellant from the videos and posted them to the department's Facebook page, asking the public to assist in identifying the suspect. Multiple people called to identify Appellant as the person in the photographs.

Subsequently, Appellant was indicted for the offense of robbery. Appellant pleaded "not guilty," and the matter proceeded to a jury trial.

**Trial Evidence**

Miller testified to the events of December 18, identifying Appellant as the person who attacked him and took the money. He testified that he suffered cuts, bruises, and swelling around his mouth from the incident, caused by Appellant striking him in the face. The State introduced photographs of Miller's injuries, as well as surveillance footage of the incident from multiple angles.

Jeanie Johnston, the customer at the cash register during the incident, testified that while she stood at the cash register to receive her change, she saw a "bigger built black gentleman," possibly wearing a black hoodie, approach the cashier from behind and push Miller. Johnston identified Appellant as the person who attacked the cashier. While the cashier and Appellant fought over the money, Johnston shouted for help, but no one came, and Appellant left the store with cash from the drawer. As Appellant left the store, he stopped between the two sets of double doors at the entrance to retrieve a black handgun from the area of his sock, then exited out of the second set of doors.

Racheal Gulley testified that she stopped at the Brookshire's to purchase milk on December 18. When she walked in, she saw two people hiding behind a display and they told her to call the police because a robbery was in progress. Gulley briefly looked toward the cash registers and saw the cashier being attacked by a man, but quickly exited the store to make the call. The operator asked Gulley to describe the situation inside the store, so she approached the doors again. This time, she encountered the man who was previously attacking the cashier. The man bent down, pulled a dark-colored "revolver-type gun" out of his sock, told her to "have a good evening," and then left the store.

Michael Morrison, the store's director, testified that he retrieved the surveillance footage of the incident from the store's cameras and provided same to law enforcement. One camera covering the area between the two sets of entrance doors did not capture anything relevant. Morrison stated that by comparing the amount of cash the computer indicated should be in the drawer to how much remained after the incident, he determined that Appellant took $102.00 from the cash drawer. Morrison affirmed that Appellant had neither permission nor authority to take anything from the store, including cash from the register.

Appellant elected to testify and recounted a different version of the events that occurred on December 18. He claimed to be staying at a local motel and went to the Brookshire's to buy almond milk and obtain change during the transaction to use for laundry. Appellant located the milk in the dairy case but did not pick it up because the available size would not fit in his motel room refrigerator. He approached the customer service counter to ask whether he could get change without making a purchase but, no one was there. Appellant then saw that the cash drawer was open at the only active cash register (where he indicated that two customers, a man and a woman, stood), and decided to ask whether he could get change "in between the transaction." As he walked toward the register and began speaking, the cashier "snapped," began screaming, and threw the "whole cash register" onto the ground. The cashier then physically assaulted Appellant, grabbing him by the neck and choking him with "the ball of his shoulder." During the altercation, the cashier put Appellant in an "arm bar" and pushed him away from the cash register and back toward the aisles. Appellant briefly broke free, but the cashier grabbed him again, put him into a "sleeper," and tried to drag him to the ground. When Appellant again "broke away," he tried to grab his hat (which fell onto the floor during the struggle) and run out of the store but felt a hard blow to his head from an unknown object. The cashier grabbed him a third time, this time in a "choke hold" from behind. Appellant was unsure how he freed himself, but he started "swinging" to defend himself, and hit the cashier "a couple times," after which the cashier fell. Appellant decided to leave the store, but for some reason stopped between the sets of double doors to remove his gun from his pants leg. He encountered a woman in a blue sweat suit standing outside (who he alleged was Jeanie Johnston) who "screamed" and "yelled" at Appellant. Appellant then ran to his truck and drove away. Appellant stated that the video surveillance footage did not accurately show the events as he

3

remembered them, and that he was not the person shown reaching toward the cash register or exiting the store.

## Evidentiary Objections

Before the State began cross-examining Appellant during the guilt-innocence phase of trial, defense counsel requested a hearing outside the jury's presence. During that hearing, defense counsel objected to the admission of documents regarding several events in Appellant's criminal history about which the State intended to question Appellant for purposes of impeachment. Specifically, defense counsel objected to (1) Exhibits 22 through 29 on the basis that the offenses involved were not crimes of moral turpitude, (2) Exhibits 14 through 17, 20 and 21 because those events occurred too remotely in time, and (3) Exhibits 14 through 17, 20, and 21 because their prejudicial effect far outweighed their probative value. The trial court ultimately overruled Appellant's objections and admitted all the contested exhibits into evidence. Thereafter, the State's attorney questioned Appellant about each of the aforementioned convictions.

Notably, over the objection of defense counsel, the State asked questions and elicited testimony from Appellant regarding the facts underlying his conviction for injury to a child, including the nature and extent of the child's injuries:

Q: What kind of injuries were alleged to have occurred to [the child]?

A: I'm not sure exactly what happened to him.
…

Q: Isn't it true that you were accused of causing injuries to [the child] that included swelling to his face and head area, blackened right eye, face and neck scratches, and a CT scan ended up showing that there was a fracture in the head area?

A: That's incorrect.
…

Q: But that's what was charged -- Well, in the indictment that you pled guilty to in that case, isn't it true that it charged you with throwing … the 3-year-old, and causing bodily injury to him?

A: That's incorrect.

Q: You didn't plead guilty to Injury to a Child?

A: I pled guilty to the -- to the crime, but I didn't throw him --
…

A: The Injury to a Child, I pled guilty to it. The – you're saying that I threw him or that I fractured his head or something like that. I didn't. I woke up. We stayed in a upstairs/downstairs

4

apartments, and he fell down the stairs while I was asleep. I was 19 years old. And I don't know exactly the -- the severity of what happened. I know that they said that he had a -- a bruise under his eye or something like that. But I pled guilty to the crime because I was -- I was -- I was young and scared. I'm not going to lie to you. I was young. I was a kid.

The State also questioned Appellant, albeit much less extensively, about the facts underlying his 2013 conviction for misdemeanor assault family violence, asking, "Do you remember what happened in this case?" Defense counsel did not object to this question. Pertaining to the 2016 conviction for misdemeanor assault family violence, the State did not question Appellant about the details of the underlying incident. Instead, the State's attorney handed Appellant Exhibits 26 through 30 and asked him to review them, after which Appellant began providing details about the offense unprompted. Defense counsel did not object at any point to this testimony.

The jury ultimately found Appellant "guilty" and imposed a sentence of forty years' imprisonment. This appeal followed.

SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant contends that the evidence was legally insufficient to support jury findings that (1) he had the requisite intent to commit theft and (2) he had the requisite intent when he caused bodily injury to Miller.

**Standard of Review**

The *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the state is required to prove beyond a reasonable doubt. 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson*, 443 U.S. at 315–16, 99 S. Ct at 2786–87; *see also Escobedo v. State*, 6 S.W.3d 1, 6 (Tex. App.–San Antonio 1999, pet. ref'd). In reviewing the legal sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks*, 323 S.W.3d at 898–99.

The trier of fact is the sole judge of the credibility of the witnesses and can believe all, some, or none of the testimony presented, and a reviewing court affords almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *see also Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We defer to the trier of fact's resolution of any conflicting inferences raised in the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326, 99 S.Ct. 2781; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Clayton*, 235 S.W.3d at 778. A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances; the duty of a reviewing court is to ensure that the evidence presented supports a conclusion that the defendant committed the crime charged. *See Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.—Corpus Christi 2006, no pet.); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the offense(s) as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id.*

**Applicable Law**

In relevant part, a person commits the offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 29.02(a) (West 2023). A person commits theft if he unlawfully appropriates property with intent to deprive the owner of said property. *Id.* § 31.03(a) (West 2023). Appropriation of property is unlawful if it is without the owner's effective consent. *Id.* § 31.03(b)(1). "Deprive" means, in relevant part, to withhold property from the owner permanently or for so extended a period that a major portion of the value or enjoyment of the property is lost to the owner. *Id.* § 31.01(2)(A) (West 2023). The requisite specific intent to commit theft can be inferred from a defendant's conduct and remarks and from all surrounding circumstances. *See Sanchez v. State*, 428 S.W.3d 240, 245 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

6

With respect to the assault component of robbery, "bodily injury" is "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8) (West 2023). A lasting physical injury or impairment is not necessary to sustain a finding that the defendant caused the victim bodily injury within the statutory definition. *Lewis v. State*, 530 S.W.2d 117, 118 (Tex. Crim. App. 1975). This definition is broadly construed to include "even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Lane v. State*, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989). In the case of robbery, the bodily injury element is satisfied when "violence is clearly perpetrated against another for the purpose of ... preventing or overcoming resistance to theft." *Id.* at 787.

A person acts "intentionally" with respect to the result of his conduct when it is his conscious objective or desire to cause the result. *See* TEX. PENAL CODE ANN. § 6.03(a) (West 2023). A person acts "knowingly" with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). A person acts "recklessly" with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c).

**Intent to Commit Theft**

Appellant's argument presumes that his version of events (in which he approached Miller to ask for change, and Miller attacked him without cause) is the accurate one. He alleges that Miller's testimony as to his perception of Appellant's intent is the only evidence pertaining to this element, and that such evidence is legally insufficient to support a finding that Appellant was in the course of committing theft. Intent to commit theft (that is, intent to deprive the appropriated property's owner of said property) is typically proven through circumstantial evidence, and may be inferred from the defendant's acts, words, and conduct, as well as from the surrounding circumstances in general. *State v. Fuller*, 480 S.W.3d 812, 823 (Tex. App.—Texarkana 2015, pet. ref'd); *Sanchez*, 428 S.W.3d at 245.

Miller testified that he noticed Appellant in the store but did not interact with him until Appellant shoved Miller aside and attempted to reach into the open cash register. During the physical struggle that ensued, Appellant continued trying to get to the cash in the drawer, and once Miller fell to the ground, Appellant picked up the fallen money before fleeing the store. Johnston also witnessed Appellant approach Miller from behind and suddenly push him, and saw Appellant take the cash that fell from the drawer before exiting the store. Morrison's testimony

7

that money was missing from the cash drawer additionally corroborated Miller's and Johnston's accounts. It was within the province of the jury to determine which testimony to credit and which to reject. *See* **Hooper v. State**, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury could have rejected Appellant's testimony regarding his version of events and credited the testimony of Miller and Johnston. From said testimony, a rational jury could have found that Appellant acted with the intent to deprive Brookshire's (the rightful owner of the cash) of the stolen money, and that he was in the course of committing theft when he assaulted Miller.

**Intent to Obtain or Maintain Control of Property**

Appellant claims that the injuries suffered by Miller were not the result of any desire on Appellant's part to obtain or maintain control of property but were "incidental to the aggressive attack by Mr. Miller on … Appellant." Other than again presuming that the version of events to which Appellant testified is the correct one, Appellant does not provide any analysis or explanation as to *why* the trial evidence on this element is legally insufficient.

As aforementioned, Miller testified that after Appellant first pushed him, Appellant immediately reached for the cash register, and he tried to get to it multiple times during the altercation. The surveillance video shows Appellant reached towards or into the cash drawer at least three times while Miller attempted to stop him, and took the bills from inside the drawer once Miller was incapacitated. Johnston testified to her understanding, from the altercation she witnessed, that Appellant was attempting to rob the store, and that after the struggle with Miller, Appellant ran away with the money. Gulley similarly stated that upon entering the store, she saw Appellant attacking Miller. In general, "a theft occurring immediately after an assault will support an inference that the assault was intended to facilitate the theft." **Cooper v. State**, 67 S.W.3d 221, 224 (Tex. Crim. App. 2002). A rational jury could reasonably have inferred that Appellant initiated the assault on Miller, and that the motive for such assault was a desire to obtain the money from the cash register.

We recognize that Appellant testified to a different sequence of events, wherein Miller attacked Appellant for seemingly no reason. Again, however, it is the jury's role to reconcile conflicting testimony. From its "guilty" verdict, the jury clearly determined that Appellant's testimony was either not credible or less credible than the other testimony presented at trial, and we must defer to the jury's decision when that decision is based upon an evaluation of the witnesses' credibility. *See* **Lancon**, 253 S.W.3d at 705. Based on the foregoing evidence, when

viewed in the light most favorable to the verdict, giving due credit to the jury's resolution of the conflicting evidence and the weight given to the witnesses' testimony and other evidence, we conclude that a rational jury could have found beyond a reasonable doubt that Appellant intentionally, knowingly, or recklessly caused bodily injury to Miller with the intent to obtain or maintain control of the money from the cash register.

We overrule Appellant's first issue.

## IMPEACHMENT EVIDENCE

In his second issue, Appellant argues that the trial court committed reversible error (specifically in violation of Texas Rule of Evidence 609) by admitting certain impeachment evidence related to his criminal history. The State concedes that several of the challenged exhibits were inadmissible but contends that the admission of said exhibits is not reversible error.

### Standard of Review and Applicable Law

We review a trial court's decision to admit evidence under an abuse of discretion standard. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). A trial court abuses its discretion only when the decision lies "outside the zone of reasonable disagreement." *Id.*

Texas Rule of Evidence 609(a) provides that witness credibility may be attacked by admitting evidence that the witness previously has been convicted of a felony or crime of moral turpitude if the trial court determines that the probative value of admitting the evidence simply outweighs its prejudicial effect. *See* TEX. R. EVID. 609(a); *Meadows v. State*, 455 S.W.3d 166, 170 (Tex. Crim. App. 2015). Rule 609(b) limits Rule 609(a) by providing that evidence of a prior conviction is inadmissible if more than ten years elapsed since the later of the date of conviction or release of the witness from the confinement imposed for that conviction, unless the court determines that the probative value of the conviction, supported by specific facts and circumstances "*substantially* outweighs its prejudicial effect." TEX. R. EVID. 609(b) (emphasis added); *Meadows*, 455 S.W.3d at 170. When considering the probative value of evidence versus its possible prejudicial effect, we presume that the trial court conducted the appropriate balancing test, which need not be shown in the record. *Martin v. State*, 570 S.W.3d 426, 437 (Tex. App.—Eastland 2019, pet. ref'd).

**Analysis**

The events and corresponding exhibits about which the State questioned Appellant, and to which Appellant's trial counsel objected, are as follows:

| Year | Event | Exhibit(s) |
|------|-------|-----------|
| 2005 | Final conviction for Injury to a Child | 14, 15 |
| 2005 | Final conviction for Possession of Controlled Substance, < One Gram | 16 |
| 2005 | Probated sentence for Tampering/Destroying Evidence | 17 |
| 2005 | Probated sentence for Prohibited Substance in a Correctional Facility | 18 |
| 2003 | Final conviction for Possession of Controlled Substance, < One Gram | 20 |
| 2005 | Probated sentence for Evading Arrest with Vehicle | 21 |
| 2013 | Probated sentence for misdemeanor assault— family violence | 22, 23, 24, 25 |
| 2016 | Probated sentence for misdemeanor assault— family violence | 26, 27, 28, 29, 30[2] |

Appellant asserts that Exhibits 14, 15, 16, 17, 18, 20, and 21 were inadmissible because more than ten years elapsed since the events in question and their probative value does not substantially outweigh their prejudicial effect. The State concedes that Exhibits 16, 17, 18, 20, and 21 were inadmissible for this reason; therefore, we need not consider these exhibits' admissibility. Further, the record indicates that Appellant's counsel did not object to the admission of Exhibit 18 at trial; consequently, Appellant preserved no error pertaining to this exhibit for our review. *See* TEX. R. APP. P. 33.1(a)(1). Thus, we need only determine whether Exhibits 14 and 15 were admissible.

*Exhibits 14 and 15*

The date on Appellant's judgment of conviction for the felony offense of injury to a child is April 18, 2005; therefore, it is clear from the record that more than ten years elapsed from the date of conviction to the time of trial (which commenced in March of 2024). The judgment also indicates the trial court imposed a sentence of five years' imprisonment. However, during the hearing at the trial of this matter, Appellant stated that he was incarcerated for *seven* years for

---

[2] At trial, Appellant's counsel objected to the admission of Exhibits 22 through 30 solely on the basis that the offenses set forth therein (both misdemeanor assault family violence) were not crimes of moral turpitude. Appellant appears to have abandoned this argument on appeal.

this offense. The State argues that because (1) this testimony is the only record evidence to show when Appellant was released from confinement, (2) a seven-year term of imprisonment meant Appellant would have been released in 2012, and (3) Appellant committed the instant offense of robbery in 2022, evidence of this offense does not run afoul of the time limit in Rule 609(b). However, it is our understanding (with which our sister courts appear to agree) that the relevant date for determining remoteness under Rule 609(b) is the date of trial. *See, e.g.*, ***Pena-Flores v. State***, No. 04-22-00539-CR, 2024 WL 1193287, at *4 (Tex. App.—San Antonio Mar. 20, 2024, no pet.) (mem. op., not designated for publication) (examining whether release from confinement occurred "within ten years of trial"); ***Loza v. State***, 659 S.W.3d 491, 503 (Tex. App.—Eastland 2023, no pet.) (appellant was incarcerated for crime "within ten years before trial"); ***Blacklock v. State***, 611 S.W.3d 162, 171 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (remote convictions occurred over ten years "before trial"); ***Chitwood v. State***, 350 S.W.3d at 746, 749 (Tex. App. – Amarillo 2011, no pet.) (conviction was more than ten years old "at the time of trial"). Therefore, Exhibits 14 and 15 were admissible only if the probative value of Appellant's 2005 conviction for injury to a child substantially outweighed its prejudicial effect. *See* TEX. R. EVID. 609(b).

In weighing the probative value of a conviction against its prejudicial effect, we consider the following nonexclusive list of such factors (also known as the ***Theus*** factors): (1) the impeachment value of the prior crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent history; (3) the similarity between the past crime and the offense being prosecuted; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. *See* ***Leyba v. State***, 416 S.W.3d 563, 572 (Tex. App.–Houston [14th Dist.] 2013, pet. ref'd) (citing ***Theus v. State***, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992)); *see also* ***Meadows***, 455 S.W.3d at 170 ("In deciding whether, in the interests of justice, the probative value of a remote conviction substantially outweighs its prejudicial effect, a court may consider all relevant specific facts and circumstances, including whether intervening convictions dilute the prejudice of that remote conviction").

Under the first factor, consideration must be given to the impeachment value of the prior convictions. The impeachment value of crimes involving deception is higher than for crimes not involving deception. ***Loza***, 659 S.W.3d at 503. The offense of injury to a child does not typically involve untruthfulness or deception and is not the type of crime that would ordinarily weigh

heavily against a witness's veracity. Thus, the first factor weighs against admissibility. The second *Theus* factor considers temporal proximity and later conviction history. *Theus*, 845 S.W.2d at 881. The conviction for injury to a child is not recent, having occurred approximately nineteen years before trial, and this would seemingly weigh against admission. However, Appellant's subsequent conviction history (including two convictions in 2013 and 2016, respectively) serves to demonstrate "a propensity for running afoul of the law," and the intervening convictions may dilute the prejudice of the more remote conviction. *Id.*; *see Meadows*, 455 S.W.3d at 170. This factor weighs slightly in favor of admission.

In examining the third factor, similarity between an offense and the current offense militates against admissibility, whereas dissimilarity between the past offense and the current offense favors admissibility. *Theus*, 845 S.W.2d at 881. The reasoning here is that the admission of a past crime similar to the one charged creates a risk that the jury could convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense. *Id.* Injury to a child and robbery are similar in that both require the offender to have intentionally, knowingly, or recklessly inflicted bodily injury upon another. This factor weighs against admissibility. The fourth and fifth factors "both depend on the nature of a defendant's defense and the means available to him of proving that defense." *Id*. "When the case involves the testimony of only the defendant and the State's witnesses, ... the importance of the defendant's credibility and testimony escalates." *Id.* As the importance of the defendant's credibility rises, so does the State's need for an opportunity to impeach the defendant. *Id.* Here, Appellant was the only witness who testified in his defense. Furthermore, Appellant's version of the events of December 18, 2022, differed greatly from that given by the State's witnesses. Consequently, Appellant's credibility was of high importance, and the State's need for an opportunity to impeach Appellant's credibility rose in turn. *See id.* Therefore, the fourth and fifth factors weigh in favor of admission.

In conclusion, the majority of the *Theus* factors weigh in favor of admitting the challenged evidence. Based on our consideration of all five *Theus* factors and the wide discretion we afford the trial court, we hold that the probative value of Appellant's prior conviction outweighed its prejudicial effect. We cannot conclude that the trial court abused its discretion in allowing the State to impeach Appellant with his prior conviction for injury to a child. We overrule this portion of Appellant's second issue.

*Exhibits 16, 17, 18, 20, and 21*

The State concedes that Exhibits 16, 17, 18, 20, and 21 were inadmissible under Rule 609(b) and that the trial court erred by admitting them.

A trial court's erroneous evidentiary ruling does not result in constitutional error; therefore, it will be disregarded, and reversal is not required, if the error did not affect the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b) (the nonconstitutional error standard); *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). A substantial right is implicated when the trial court's error had a substantial or injurious effect or influence in determining the jury's verdict. *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014); *Garcia*, 126 S.W.3d at 927. In assessing the likelihood that the claimed error adversely affected the jury's decision, we must consider (1) the entire record, including all the evidence presented at trial, (2) the nature of the evidence supporting the jury's verdict, (3) the character of the alleged error and how it might be considered with the other evidence in the case, (4) the trial court's instructions to the jury, (5) whether the State emphasized the error, and (6) whether the evidence of the defendant's guilt is overwhelming. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). Therefore, we will not reverse a conviction for nonconstitutional error if, after examining the record as whole, we have fair assurance that the error did not influence the jury's verdict, or if it did, it had only a slight effect. *Barshaw*, 342 S.W.3d at 93.

In this case, after considering the entire record, we conclude that the record contains overwhelming evidence of Appellant's guilt that was not tarnished by the erroneous admission of extraneous offense evidence. Both Miller and Johnston testified to Appellant's attack on Miller, as well as his repeated attempts to get to the cash in the register and his ultimate success in doing so. Johnston and Gulley additionally corroborated each other's testimony regarding Appellant's retrieval of a firearm before leaving the store. Moreover, the jury viewed surveillance camera footage that clearly showed both Appellant's face and his efforts (and eventual success) toward obtaining the stolen money, and more than one otherwise disinterested witness identified Appellant as the person shown in the video. Although Appellant testified that he never intended to steal from the store and that Miller attacked him without cause, no other evidence supported

13

Appellant's version of events. The overall record and the evidence of Appellant's guilt weigh against a finding of harmful error.

Addressing the nature of the error and its effect on other evidence in the case, Appellant's prior convictions bore on his credibility and could be considered by the jury in the context of weighing his credibility and the credibility of the State's witnesses. Therefore, the erroneous admission of evidence regarding specific past convictions could have impacted the jury's willingness to believe Appellant's version of events. This factor weighs in favor of a finding of harmful error.

In its charge, the court instructed the jury that it was not permitted to consider evidence of Appellant's extraneous offenses "to prove the character of a person in order to show that he acted in conformity therewith." We presume that the jury follows a trial court's instructions regarding the consideration of evidence. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009). Therefore, any potential harm to Appellant would be further mitigated by the trial court's limiting instruction, and this factor weighs against a finding of harm. *See id.*; *Wishert v. State*, 654 S.W.3d 317, 334 (Tex. App.—Eastland 2022, pet. ref'd). Finally, the record shows that the State did not place emphasis upon the drug possession offenses, the tampering offense, or the evading arrest offense while presenting its case, weighing against a finding of harmful error. After questioning Appellant about the existence of these convictions and the dates on which said convictions occurred, the State did not mention them again prior to the jury retiring to deliberate.

Because the majority of the relevant factors weigh against a finding of harmful error, and in light of all the other evidence, we have fair assurance that the erroneous admission of Exhibits 16, 17, 18, 20, and 21 did not have a substantial and injurious effect or influence on the jury's verdict. Consequently, we must disregard the error and overrule this portion of Appellant's second issue. *See* Tex. R. App. P. 44.2(b).

### *Details of Prior Offenses*

Appellant asserts that the trial court abused its discretion "by allowing the State to elicit testimony about facts forming the basis of the Appellant's prior conviction[s] for injury to a child and assault family violence." Because Appellant did not object at trial to the introduction of factual details about the 2013 and 2016 convictions for misdemeanor assault family violence, he

14

waived those complaints on appeal. *See* TEX. R. APP. P. 33.1. Thus, we need only examine this issue as it pertains to Appellant's conviction for injury to a child.

While the *fact* of a prior conviction may be introduced for impeachment purposes under Rule 609, the *details* of the conviction are generally inadmissible. ***Jabari v. State***, 273 S.W.3d 745, 753 (Tex. App–Houston [1st Dist.] 2008, no pet.) (citing ***Mays v. State***, 726 S.W.2d 937, 953 (Tex. Crim. App. 1986)). This is because evidence of prior convictions and extraneous bad acts "is inherently prejudicial, tends to confuse the issues in the case, and forces the accused to defend himself against charges which he had not been notified would be brought against him." ***Arebalo v. State***, 143 S.W.3d 402, 407 (Tex. App.—Austin 2004, pet. ref'd) (quoting ***Albrecht v. State***, 486 S.W.2d 97, 100 (Tex. Crim. App. 1972)). Although exceptions to this rule apply where, for example, a witness makes statements that create a false impression of law-abiding behavior, or testifies attempting to present an incomplete picture of the incident underlying a criminal conviction, the State did not argue that either exception applied at trial and does not address this issue in its response brief. *See* ***Fuentes v. State***, 991 S.W.2d 267, 279 (Tex. Crim. App. 1999); ***Delk v. State***, 855 S.W.2d 700, 704 (Tex. Crim. App. 1993) (overruled on other grounds by ***Ex Parte Moreno***, 245 S.W.3d 419, 425 (Tex. Crim. App. 2008)). At trial, in response to Appellant's objection, the State argued that the details of the offense were admissible to, "… flush out the truthfulness of this Defendant. He's brought that into question, and asking about the specific incident and his willingness to be truthful. He's already pled guilty to it." From our examination of the record, Appellant did not assert that he was never convicted of a crime, nor did he previously testify to an incomplete or misleading version of the events giving rise to the conviction. Probing into the details of the incident was prejudicial because it forced Appellant to defend himself against charges that were not the subject of the present action, implied that he was a violent person, and suggested that the current offense was in conformity with that character. We agree with Appellant that the trial court improperly permitted the State to elicit testimony about the details of his conviction for injury to a child.

Having held that it was error to allow the State to question Appellant about the details of his prior conviction for injury to a child, we must determine whether that error was harmful. As aforementioned, the erroneous admission of evidence is nonconstitutional error, and requires us to assess whether the error had a substantial or injurious effect or influence in determining the jury's verdict using the factors set forth in ***Gonzalez***. *See* ***Gonzalez***, 544 S.W.3d at 373.

15

As set forth *infra*, the evidence of Appellant's guilt in this case is overwhelming, which weighs against a finding that this error was harmful. Similarly, the limiting instruction to the jury regarding extraneous convictions mitigated the potential injury and weighs against a finding of harmful error. Concerning the nature of the error, this factor weighs in favor of finding harmful error because the error permitted the State prejudicially to infer that Appellant had a violent character and likely acted in conformity with that character. *See Arebalo*, 143 S.W.3d at 407. However, we are mindful that the *existence* of the conviction was properly admitted, and only the specific details of the victim's injuries were erroneously presented to the jury, which somewhat mitigates the concern regarding prejudice. Finally, although the details of the injury to a child offense should not have been in evidence at all, it does not appear that the State unduly emphasized those details while presenting its case at the guilt-innocence phase of trial. After questioning Appellant about the nature of the injuries suffered by the child, the State's attorney did not revisit the issue at any point prior to the jury retiring for deliberations. Therefore, this factor weighs against a finding of harm.

Based on the foregoing, we have fair assurance that the erroneous admission of details underlying Appellant's conviction for injury to a child did not influence the jury or influenced the jury only slightly. *See Barshaw*, 342 S.W.3d at 93-94. Therefore, we conclude that the trial court's error in admitting evidence of those details did not affect Appellant's substantial rights and must be disregarded. *See* TEX. R. APP. P. 44.2(b). We overrule the remaining portion of Appellant's second issue.

### DISPOSITION

Having overruled each of Appellant's two issues, we ***affirm*** the judgment of the trial court.

BRIAN HOYLE
Justice

Opinion delivered October 31, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)

16



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**OCTOBER 31, 2024**

**NO. 12-24-00116-CR**

**JOSEPH DAN FULLER,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 413th District Court

of Johnson County, Texas (Tr.Ct.No. DC-F202300041)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*